STRAUB and another, Respondents, vs. SCHADEBERG and another, Appellants.

*May 18—June 16, 1943.*

For the appellants there was a brief by *Nash & Nash,* and oral argument by *Walter J. Clark,* all of Manitowoc.

For the respondents there was a brief by *Hougen, Brady & Murphy* of Manitowoc, and oral argument by *Frank A. Murphy.*

MARTIN, J. The plaintiffs' son, Jack Straub, was killed in a collision between an automobile driven by the defendant, George Schadeberg, Jr., and a bicycle operated by Straub on October 11, 1941. The Straub boy, then eleven years of age, was riding his bicycle proceeding in a southerly direction on Eleventh street in the city of Manitowoc. Defendant Schadeberg was driving his automobile proceeding in a southerly direction on said street. As the Schadeberg car overtook and was passing the Straub boy the collision occurred. Straub was thrown from his bicycle, striking his head against the west curb, and died shortly thereafter without regaining consciousness. It is conceded that at the time there was a strong west wind which blew in gusts. These gusts of wind caused the Straub bicycle to zigzag.

Eleventh street is thirty-eight feet in width from curb to curb, paved with concrete, with a center marked line. The collision occurred south of the center of the block between New York avenue on the north and Huron street on the south. There were two parked cars on the west curb of the street. One was parked about one hundred twenty-five feet south of New York avenue, the other was parked one hundred fifty feet north of the place of the accident and several hundred feet south of the first parked car. The latter car is referred to as the "Dent" car. Schadeberg testified that as the Straub boy passed the Dent car his line of travel was about eight feet from the west curb; that as Straub passed the Dent car he turned his bicycle nearer to the west curb. The Schadeberg car was about fifty feet north (to the rear) when Straub passed the Dent car. Schadeberg testified that he blew his

horn as soon as he saw the boy on the bicycle; that he was then about one hundred seventy-five feet north of the Straub boy. He further testified that he *thought* he blew his horn a second time when close to the Dent car, about fifty feet from the boy. He did not testify definitely that he had blown the horn a second time.

Walter Baryenbruch, the only eyewitness to the accident, was driving his car in a northerly direction on Eleventh street between Huron and New York avenue when the collision occurred. He testified that he did not hear any horn blown; that he was about one hundred seventy-five feet south of the point of the collision when it occurred; that there was nothing in the street between his car and the Schadeberg car as he approached the point of collision; that when he first noticed the Straub boy on his bicycle the bicycle was then about three feet from the west curb "fairly close to the curb, I would say," then the wind, or something, seemed to curve the bicycle toward the center of the street; that when he first noticed the Straub bicycle the right side of the Schadeberg car was about two feet from the bicycle's line of travel, the distance between the bicycle and the car was about two feet; that when the Schadeberg car got opposite the bicycle the bicycle swerved to the left and into the right side of the Schadeberg car. He further testified that "it was quite windy that day." He estimated the speed of the Schadeberg car at between twenty and twenty-five miles an hour.

After the collision Schadeberg's car swerved to the left or southeast. It left skid marks on the pavement for a distance of between thirty-eight and thirty-nine feet. Traffic Policeman Tulach testified as an expert that Schadeberg's car would have to travel between thirty to thirty-five miles per hour when the brakes applied would produce skid marks in the pavement thirty-eight or thirty-nine feet long. Officer Larson, who went to the scene of the accident with the ambulance, testified that Schadeberg told him the boy was weaving back and forth.

The accident occurred at about 12:15 p. m. The day was bright and clear, the pavement was dry.

Appellants contend that there is no evidence to support the jury's findings that defendant Schadeberg was causally negligent in overtaking and passing the Straub boy on his bicycle. They argue that there was no statutory duty requiring Schadeberg to give warning as he approached and was about to pass the boy on the bicycle. It is true that sec. 85.16 (1), Stats., does not require that a warning be given where the overtaking motor vehicle is being operated in a business or a residence district. Sub. (1) of sec. 85.16 provides:

"The operator of an overtaking motor vehicle not within a business or residence district shall give audible warning with his warning device before passing or attempting to pass a vehicle proceeding in the same direction."

The photographs in evidence show that the collision occurred in a residence district. Defendant may be negligent, regardless of the statutory provision above quoted, and under the facts disclosed by the evidence there was a jury issue as to whether Schadeberg was negligent in failing to give an audible warning as he approached and undertook to pass the bicycle. Schadeberg testified that he blew his horn as soon as he saw the boy on the bicycle. At this point his car was about one hundred seventy-five feet to the rear of the bicycle. He did not testify that he again blew the horn before overtaking the boy. He knew there was a strong west wind which caused the bicycle to zigzag. Naturally, he knew that the wind was such as would interfere with the audibility of a warning given at a distance of one hundred seventy-five feet. The witness Baryenbruch testified that he did not hear any horn blown. Sec. 85.16 (4), Stats., provides:

"The operator of a vehicle about to be overtaken and passed by another vehicle approaching from the rear shall give way to the right if practical in favor of the overtaking vehicle

*on suitable and audible signal being given* by the operator of the overtaking vehicle and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

There is testimony to the effect that after the Straub boy passed the Dent car he turned his bicycle toward the west curb, and Baryenbruch testified that the bicycle then traveled at a distance of about three feet from the west curb; that at times the wind caused the bicycle to zigzag. His further testimony is to the effect that there was only about two feet of space between the bicycle and the right-hand side of Schadeberg's car. Sec. 85.16 (3), Stats., provides:

"The operator of any vehicle overtaking another vehicle proceeding in the same direction *shall pass such vehicle at a safe distance to the left thereof* and shall not again operate to the right side of the roadway until safely clear of such overtaken vehicle."

The Straub boy being dead, there exists, until the contrary is proved, a presumption that he did not hear any warning signal given by the defendant Schadeberg at the time and place he claims to have sounded his horn, and that he was not negligent in not hearing the horn. In the absence of evidence to the contrary, it will be presumed that the Straub boy was not negligent. See *Smith v. Green Bay,* 223 Wis. 427, 430, 271 N. W. 28. The jury found that Straub was not negligent as to the control and management or as to the position of his bicycle on the road. We find no evidence to sustain the finding that he was negligent as to lookout. On that issue the trial court, in its decision on the motions after verdict, said:

"At the time the motions were argued the court had some doubt about the jury's finding of negligence in respect to lookout on the part of the boy, especially in view of its answers to the other subdivisions of the same question. While the jury found the boy not negligent as to his position on the roadway and not negligent as to control of his bicycle, nevertheless it had a right to conclude that because of his position so near the

line of automobile traffic, plus the windy weather, he should have maintained a better lookout than he did for auto traffic coming from the rear. True, a bicycle is not equipped with a mirror but a mere glance sidewise would probably have been sufficient to have caused the boy to thereafter swerve slightly to the right and in time to have prevented the collision. Common experience satisfied these jurors that boys riding bicycles in the exercise of ordinary care should and do look sidewise and toward the rear under circumstances such as existed here. I do not feel warranted to change the answers of the jury in this respect."

Schadeberg testified that he was traveling at approximately twenty miles per hour when the collision occurred. Going twenty miles an hour, his car would travel twenty-nine and thirty-three hundredths feet per second. According to the testimony of the traffic officer who examined the skid marks made by the Schadeberg car it would have to travel between thirty and thirty-five miles per hour in order to produce skid marks of the length he found. The car traveling at thirty miles per hour would travel forty-four feet per second. At neither rate of speed would a mere glance sidewise by the Straub boy disclose the near presence of the car. It would require a substantial turn of the body. On the other hand, had Schadeberg blown his horn when within a distance of thirty or forty feet from the boy, we must presume that he would have responded to the warning and turned nearer to the right curb.

Appellants rely principally on the case of *Hunter v. Sirianni Candy Co.* 233 Wis. 130, 288 N. W. 766. The facts in that case are clearly distinguishable from those in the instant case. On the evidence there was a clear jury issue as to Schadeberg's negligence. Their findings as to his negligence are amply sustained by the evidence.

We are of the opinion that there is no evidence to sustain the finding that the deceased Straub was negligent as to lookout, and on the respondents' motion for review the answer to sub. (a) of question (3) and sub. (a) of question (4) must

be changed from "Yes" to "No," and the answer, "40%," to question (7) must be stricken.

Appellants further contend that there is no competent evidence upon which an award of damages could be made to the father because he sustained no pecuniary loss nor any loss of society and companionship. This contention is based on the fact that plaintiffs, at the time their son was killed, were divorced and living apart. It appears that while the parties were living in California in the fall of 1940 Mrs. Straub obtained a divorce from her husband. The parties made a property settlement which was approved by the court. The mother was granted the custody and control of the two boys, their only children. The father was required to and did thereafter pay to the mother the sum of $30 per month for each of the boys. He continued to pay $60 per month until May, 1942. The mother is thirty-nine years of age, the father is forty-one years of age. After obtaining her divorce in California in December, 1940, the mother and the two children returned to Manitowoc with the consent of the father. The decree in the divorce action gave the father the right to see and visit the children at reasonable times.

This action is brought by the parents under sec. 331.04 (1) and (2), Stats. Their right of recovery is based on the parental relationship. There being no cause of action in favor of the estate of the deceased minor son, and both parents surviving, the action had to be brought in the names of both parents. No claim is made that the awards for pecuniary loss and the loss of society and companionship are excessive. The only contention is that the father suffered no loss in either respect.

Plaintiffs were married seventeen years. They had marital difficulties, and in 1938 the father went to California to establish a tourist-cabin business. Eight months later a reconciliation was effected and the mother and two children joined the father in California. Further marital difficulties developed and Mrs. Straub obtained a divorce in December, 1940, after

which time she and the children returned to Manitowoc. In the property settlement Mrs. Straub received property valued at $10,900. It appears that the relationship between the two boys and their father was friendly; that they exchanged letters about once a month. The father had planned to visit the children at Manitowoc during the summer of 1942; he wanted the children to go out to California to see him. He came to Manitowoc for the son's funeral in October, 1941. Plaintiffs had composed their marital difficulties once; they are both young; they may again adjust their marital differences. But in any event, who can say that if Jack Straub had lived the father would not have received pecuniary benefits both before and after the son had attained his majority. It would be a harsh conclusion to say that the father sustained no loss of society and companionship in the death of his son.

Sec. 331.04 (1), Stats., provides who may bring the action under the wrongful-death act (sec. 331.03). After naming who may bring the action, said section provides:

". . . If any of the foregoing relatives shall die at any time after such cause of action shall have accrued, the relative or relatives next in order named above shall be entitled to recover for the wrongful death of the deceased; provided, that if there be no cause of action in favor of the estate of such decedent and the person or persons to whom the whole amount sued for and recovered belongs, as above provided, shall be the husband, widow, or parent or parents, lineal descendant or ancestors, brothers or sisters of the deceased, suit may at his or her or their option be brought directly in his or her or their name or names instead of being brought in the name of the personal representative of such deceased person."

Sec. 331. 04 (2), Stats., provides:

"In addition to the benefits provided for in subsection (1), a sum not exceeding twenty-five hundred dollars for loss of society and companionship shall accrue to the parent or parents or husband or wife of the deceased."

Appellants' contention is that the father is not entitled to any benefits under the wrongful-death act. In support of their contention they cite *Munsert v. Farmers Mut. Automobile Ins. Co.* 229 Wis. 581, 281 N. W. 671, and *Hansberry v. Dunn,* 230 Wis. 626, 284 N. W. 556. Neither case supports appellants' contention. In the *Munsert Case* the father was prevented from recovery by the exclusion clause in the policy covering his car. At page 588 the court said:

"The father being prevented from recovery by the exclusion clause of the policy, the recovery allowable goes to the mother. The interest of the parents in the recovery where father and mother both recover is equal, and one half of the compensation allowed by the verdict belongs to the mother. The mother is therefore entitled to recovery of one half of the amount assessed. . . . Her recovery is limited to one half the 'pecuniary loss' resulting from the death of the child, and one half of the compensation allowed for 'loss of society and companionship.' "

In the *Munsert Case, supra,* the father was denied any part of the pecuniary recovery and for any loss of society and companionship solely because of provisions in the insurance policy. That did not defeat the right of the mother to recover one half the pecuniary loss resulting from the death of the child and one half of the compensation allowed for loss of society and companionship.

In the *Hansberry Case, supra,* the pecuniary loss to the parents from the death of their daughter was assessed at $2,500. The negligence of defendant Dunn was assessed at fifty-five per cent of the total negligence involved and that of the plaintiff Anna Hansberry (the mother) at forty-five per cent. At page 638 the court said:

"Where a statute has created in certain specified beneficiaries a cause of action for death by wrongful act the negligence of the beneficiary must be compared with that of the tortfeasor and his recovery diminished or defeated in accordance

with the result of that comparison. In this case there are two beneficiaries, one of whom [father] is subject to no defense and the other [mother] subject to having any recovery to which she might be entitled diminished by the percentage of her negligence. It is asserted that the negligence of one statutory beneficiary affects all, and that therefore the full recovery is subject to being diminished. We think this is not the law of Wisconsin." Citing *Munsert v. Farmers Mut. Automobile Ins. Co., supra.*

Continuing, the court said:

"Upon the basis of this decision we conclude that William Hansberry is entitled to receive $1,250 or one half of the recovery, and that Anna Hansberry is entitled to receive $1,250 diminished by forty-five per cent, the amount of her negligence."

In the instant case the pecuniary loss assessed is $2,000. The loss of the child's society and companionship was reduced by the court and fixed at the maximum under the statute, $2,500. The plaintiffs, as parents of the deceased, are each entitled to one half of the total assessment. The funeral expense in the sum of $315 being an obligation of the father, he is entitled to that amount. With respect to the pecuniary loss and the loss of society and companionship the trial court carefully instructed the jury as to the elements they should consider in fixing the amount to be determined by them. We find no error in the court's instructions. The plaintiffs are entitled to judgment against the defendant George Schadeberg, Jr., and Farmers Mutual Automobile Insurance Company, his insurance carrier, in the sum of $4,815, plus their costs and disbursements.

*By the Court.*—The judgment of the circuit court is modified by increasing the amount of said judgment in favor of the plaintiffs against defendants from the sum of $2,889, plus costs and disbursements, to the sum of $4,815, plus costs and disbursements; and as so modified, the judgment is affirmed.