Hugh R. Elwyn, J.
The Commissioner of Social Services of Ulster County brings these proceedings pursuant to article 6 of the Family Court Act to have Joseph Lionel Coddington, age five, and Tammy Lee Bell, age six, declared to be permanently neglected children. The petitions in each case contain the allegations required by section 614 of the Family Court Act and specifically allege that the moral and temporal interests of the child require that the parents’ custody of the child be terminated permanently because "the parent has made no permanent plan for her child or for herself, having proved either incapable or unwilling to hold jobs that Public Assistance has arranged for her, having failed to establish any permanent abode and drifting from friends back to mother, and having failed on several occasions to cooperate with the Childrens’ Division and Public Assistance of the Department of Social Services.”
The proof shows that both of these children were voluntarily placed by the mother with the Department of Social Services on October 27, 1972. For the remainder of the year 1972 the mother visited her children not at all. Agency records show that during 1973 the mother visited with her children at the agency on 1/5/73; 2/9/73; 4/5/73; 5/18/73; 7/ 3/73; 8/14/73; 9/12/73; 10/25/73 and at the grandmother’s home on 12/26/73 for a total of nine visits for the year. In the year 1974 the mother visited with her children at the agency on 3/18/74; at Academy Green on 7/10/74 and at the agency on 9/27/74, for a total of three visits for the year. Although on cross-examination, Mrs. Freída Lewis, the caseworker in the children’s division in charge of Miss Bell’s case estimated that prior to September, 1974 the mother had visited with her children on an average of once a month, this is a more *255 generous approximation of the situation than a close scrutiny of agency records would support. No further visits with the children occurred in 1974 after the September visit and the mother has visited with the children but once in 1975, that visit having taken place at the agency on July 8, 1975.
From the time the children were voluntarily placed by their mother with the agency in October, 1972 the mother has had numerous changes of address and although she has finally succeeded in obtaining a three-room apartment in the building where her mother resides she has made no suitable plan for the future of her children. The agency’s efforts to qualify Miss Bell for employment through training at the Office of Vocational Rehabilitation have met with failure because of Miss Bell’s failure to keep appointments. She continues to be unemployed and to remain a recipient of public assistance.
During the course of the agency’s long association with Miss Bell she was repeatedly warned of what might happen with respect to the possible loss of her children if she failed to make a permanent plan for her children. In spite of such warnings, no plan for the future of the children has ever been formulated. Her lack of interest in her children has been repeatedly demonstrated over the entire period of their placement in foster care and was most recently demonstrated when she failed to attend a foster care review hearing on September 19 of this year involving her two children.
In the context of subdivision 2 of section 111 of the Domestic Relations Law which requires that a natural parent must give consent to the adoption of a child unless the natural parent has abandoned the child, the Court of Appeals in Matter of Susan W. v Talbot G. (34 NY2d 76, 80), recently reaffirmed the rule of Matter of Maxwell (4 NY2d 429, 433) that abandonment can be made out only from "a settled purpose to be rid of all parental obligations and to forego all parental rights”. (See, also, Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196; People ex rel. Scarpetta v Spence —Chapin Adoption Serv., 28 NY2d 185, cert den sub nom DeMartino v Scarpetta, 404 US 805; People ex rel. Anonymous v Anonymous, 10 NY2d 332; Matter of Bistany, 239 NY 19.) As in the unwed mother cases where it found abandonment to have been established, the Court of Appeals said "there must be a complete 'repudiation of [parenthood and an abandonment of [parental] rights and responsibilities’ (People ex rel. *256 Anonymous v Anonymous, supra, p 336; Matter of Maxwell, supra). ” (Matter of Susan W. v Talbot G., supra, p 80.)
Further, in commenting upon the father’s apparent inability or unwillingness to assume his parental obligation the court said that, "Even where the flame of parental interest is reduced to a flicker the courts may not properly intervene to dissolve the parentage” (Matter of Susan W. v Talbot G., supra, p 80).
The "flicker of interest” rule of Matter of Susan W. (supra), is, however, no longer the law of this State, for by chapter 704 of the Laws of 1975, effective August 9, 1975 the Legislature amended subdivision 6 of section 384 of the Social Services Law, section 611 of the Family Court Act and subdivision 4 of section 111 of the Domestic Relations Law to provide that, "For the purposes of this section (subdivision), evidence of insubstantial and infrequent contacts by a parent with his or her child shall not, of itself, be sufficient as a matter of law” in the case of section 384 of the Social Services Law and section 111 of the Doméstic Relations Law, "to preclude a finding that such parent has abandoned such child” and in the case of section 611 of the Family Court Act, "to preclude a determination that such child is a permanently neglected child.”
Although the purpose of the amendments to sections 384 of the Social Services Law, 611 of the Family Court Act and 111 of the Domestic Relations Law is obviously to overcome the "flicker of interest” rule of Matter of Susan W., they leave still standing as the law of this State the Court of Appeals definition of abandonment as "a settled purpose to be rid of all parental obligations and to forego all parental rights” (Matter of Susan W. v Talbot G., supra, p 80). This definition of abandonment is in obvious conflict with the statutory definition of abandonment as found in subdivision 2 of section 371 of the Social Services Law[1] and the definition of a permanently neglected child found in section 611 of the Family Court Act[2] which have *257 been construed to be virtually synonymous.* *[3]
The question arises, what effect, if any, should the Family Court give to the Court of Appeals definition of abandonment as recently enunciated in Matter of Susan W in a proceeding for permanent termination of parental rights brought pursuant to article 6 of the Family Court Act? If the definition of abandonment contained in Matter of Susan W. were to be given effect this petition would have to be dismissed for even without reliance on the "flicker of interest rule” the proof in this case is not sufficient to warrant the conclusion by a fair preponderance of the evidence that the mother has evinced "a settled purpose to be rid of all parental obligations and to forego all parental rights”. Quite the contrary; she vigorously resists this proceeding and has consistently refused all suggestions for a voluntary surrender of these children. Her intention, so far as it can be discovered, is not to be "rid of all parental obligations and to forego all parental rights”, but rather to assert them.
Although both section 371 of the Social Services Law and section 611 of the Family Court Act were a part of the law of this State at the time of the Court of Appeals decision in Matter of Susan W v Talbot G. (supra), neither statute was even mentioned in the decision. Both statutes were wholly ignored. Instead, the Court of Appeals chose to resurrect the definition of abandonment it had enunciated 16 years earlier in Matter of Maxwell (4 NY2d 429).
With all due respect to our State’s highest court, the trouble with applying the Matter of Susan W. rule to cases of alleged permanent parental neglect is that it places the emphasis upon a parent’s intent — "a settled purpose to be rid of all parental * * * rights”, rather than upon the effect of the *258 parent’s conduct upon the child with its consequent deprivation of the child’s right to concerned, functioning parents. The result of applying the “settled purpose rule” would be, in most cases, as is illustrated here, to enshrine parental rights at the cost of leaving the child forever in limbo wholly at the mercy of the parents’ wavering and fluctuating intent. In short, to borrow a phrase from another context, it would leave the child “twisting slowly in the wind”. This result ought to be avoided at all costs.
Rather, I am of the opinion that in cases brought by the Commissioner of Social Services for the permanent termination of parental rights under either section 384 of the Social Services Law or article 6 of the Family Court Act, the parents’ purpose or intent, while not wholly irrelevant, is certainly not controlling. In Matter of Vanesa "F” (76 Misc 2d 617), a proceeding brought pursuant to section 384 of the Social Services Law to terminate parental rights by reason of abandonment, the parents urged that their conduct did not evidence an intention to part with their parental rights. This contention was rejected by Surrogate Midonick, who wrote (pp 621-622) “I hold that abandonment is not defined in terms of intention, but rather in terms of conduct such as failure to visit a child for more than six months without good reason (Social Services Law, §§ 384, 371). The statutory definition of abandonment recognizes .how the infant reacts to loss of contact over a lengthy period; the infant’s moral and temporal welfare has little if any relation to the parents’ intent, merely to the tragedy of being without a parent * * * As Surrogate Bennett has held in Matter of Anonymous (13 Misc 2d 653, 657), where adoption was granted to a stepparent despite refusal to consent by one natural, divorced parent: 'the court owes an obligation to the child and the adopting parents to find an abandonment when a proper showing has been made that the parent has neglected and refused to perform his natural and legal obligations of care and support, when he has withheld his presence, the demonstration of parental affection, or the opportunity ón the part of the child to display filial affection. Failure to perform such duties by a parent constitutes a relinquishment of parental claims and an abandonment of the child’. (Accord, Matter of ''Anonymous”, 71 Misc 2d 448 [Surrogate’s Ct., Queens County].)” (See, also, Matter of Jennifer "S”, 69 Misc 2d 942 and 951.)
Applying to the facts of this case the definition of a perma *259 nently neglected child as contained in section 611 of the Family Court Act I find that there has been established by a fair preponderance of the evidence the allegations required to be established by section 614 (subd 1, pars [a], [b], [c], [d]) of the Family Court Act, to wit:
(a) Both children are under 18 years of age, Joseph Lionel Coddington having been born on September 6, 1970 and Tammy Lee Bell having been born on September 2, 1971.
(b) Both children were placed by their mother in the care of an authorized agency, to wit, the Department of Social Services of Ulster County on October 27, 1972 for placement in a foster home.
(c) The Ulster County Department of Social Services has made diligent efforts to encourage and strengthen the parental relationship.
(d) The respondent, Rosemary Bell, notwithstanding the agency’s efforts, has failed for a period of more than one year following the placement of such children in the care of the Ulster County Department of Social Services substantially and continuously and repeatedly to maintain contact with or plan for the future of the children although physically and financially able to do so.
The proceeding is adjourned for the purpose of conducting a dispositional hearing (Family Ct Act, § 625). The clerk of the court is directed to schedule such a hearing upon proper notice to all interested parties.

. " 'Abandoned child’ means a child who is abandoned or deserted in any place by both parents, or by the parent having its custody, or by any other person or persons lawfully charged with its care or custody, and left (a) in destitute circumstances, or (b) without proper food, shelter or clothing, or (c) without being visited or having payments made toward his support, for a period of at least six months, by his parent, guardian or other lawful custodian without good reason”.

. "A 'permanently neglected child’ is a person under eighteen years of age who has been placed in the care of an authorized agency, either in an institution or in a foster *257 home, and whose parent or custodian has failed for a period of more than one year following the placement or commitment of such child in the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the moral and temporal welfare of the child.”

. "But due process of law for the helpless infant, under State and Federal Constitutions, may require all courts to construe the language of both statutes [Social Services Law, art. 6; Family Ct. Act, art. 6] together, so that the infant’s best interests are truly served. Thus, if necessary for the welfare of an infant, permanent neglect may have to be construed to approximate abandonment, and vice versa.” (Matter of Jennifer "S”, 69 Misc 2d 942, 949.)