Mary Ann RAHN, Individually, and as Administrator of the Estate of Richard Joseph Denning, Deceased, Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a corporation, and James Denning, Appellees.

No. 59503.

Supreme Court of Iowa.

Nov. 23, 1977.

Napier, Napier & Wright, Fort Madison, for appellant.

Fehseke & Fehseke, Fort Madison, for appellee James Denning.

Heard before MOORE, C. J. and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

LeGRAND, Justice.

This is a dispute between the divorced parents of Richard Joseph Denning over the division of proceeds payable under an insurance policy on his life issued by Prudential Insurance Company of America. Mary Ann Rahn, his mother, claims she is entitled to all the proceeds. The court awarded her one-half and decreed that James Denning, his father, was entitled to the other half. Mary Ann Rahn appeals, and we affirm.

Richard Joseph Denning, hereafter called Rick, was born August 19, 1950. He died in 1975 following a motor vehicle accident in Thailand while a member of the United States Air Force.

His parents, Mary Ann and James, were married December 27, 1945, and divorced May 19, 1953. The decree awarded Mary Ann custody of their two children, Rick and an older brother. James was given reasonable visitation rights. Approximately a year-and-a-half after the divorce, Mary Ann married Thomas Rahn. James also remarried. Rick lived in the home of his mother and her new husband until entering military service a number of years later. Thomas Rahn assumed the role of stepfather, and a real and warm affection existed between him and Rick.

The original divorce decree required James to pay monthly support for his two children and alimony to Mary Ann. The decree was later modified to eliminate alimony and to reduce the amount of support. These parties were here once before to decide a dispute about child support. *See Denning v. Denning,* 185 N.W.2d 238 (Iowa 1971). At that time James insisted he had an oral contract with his former wife to pay child support payments of $15 per week. She denied such an agreement. We found in her favor and ordered James to pay $80 per month as the modified decree directed. The record shows he did so.

Shortly after his graduation from high school, Rick entered the United States Air Force. He was covered by a Serviceman's Group Life Insurance Policy issued by the Prudential Insurance Company of America in the amount of $20,000. The record discloses he directed the proceeds of this policy should be paid as provided by law. At the time of his death Rick had neither spouse nor children and under the applicable federal law (38 U.S.C. § 770(a)) the proceeds became payable equally to his parents, one-half to Mary Ann and one-half to James.

Prudential Insurance Company of America paid one-half of the principal amount of the policy to Mary Ann and proposed paying the other one-half ($10,000) to James. Before that was accomplished, however, Mary Ann filed this action seeking a declaratory judgment to establish her right to the entire amount. Prudential has deposited the amount due with the Clerk of Court. It is not interested in the outcome of this appeal.

Mary Ann argues James is disqualified from receiving any part of the policy proceeds by virtue of 38 U.S.C. § 765(9) which provides in part as follows:

"No person who abandoned or willfully failed to support a child during his minority, or consented to his adoption may be recognized as a parent for the purpose of this subchapter."

A parent may forfeit his rights under this statute in any one of three ways—by abandonment, by willful failure to support, or by consenting to an adoption. In the present case only the first of these is an issue, and

Mary Ann's cause depends on proof that James abandoned Rick. The trial court found against her, and we agree.

It must be conceded James was less than a model father. From the time of the divorce in 1953 until the time of Rick's death, he had little personal contact with his son. Although the exact circumstances are disputed, the record establishes beyond controversy that James had only infrequent—and short—visits with Rick. He gave him no presents on occasions such as birthday or Christmas and took only slight interest in his activities. However, he contributed to his support during the entire period of his minority. Sometimes he was late, which he explains by saying he was always hard pressed for money. After we decided in the prior appeal involving these parties that James was obligated to pay according to the decree, he borrowed enough money to make up a $4,000 arrearage in support payments. The fact that all support payments were made under court order rather than voluntarily makes no difference. See In re Schiffrin's Estate, 152 Misc. 33, 272 N.Y.S. 583 (1934).

James explains some of this apparent inattention by relating the unpleasantness associated with his visits. He says Mary Ann always found an excuse to cut the visits short and sometimes sought to disallow them entirely. He also says the visits were invariably marred by bickering and arguing with Mary Ann about money.

Mary Ann testified James refused to help out with medical expenses when Rick needed eye surgery in 1961, when the boy was eleven years old. James says this was because he was unable to help. James insisted he always had real affection for Rick and that Rick felt the same about him. There was evidence challenging this. There is, however, nothing in the record to suggest James intended to sever his parental relationship with Rick.

Mary Ann tacitly admits she is unable to establish abandonment under rules established in cases relating to the right of parents to resist adoption of their children or in cases seeking to terminate the parent-child relationship. She asks us to apply a different and less strict standard for the term here, as New York has done in several cases dealing with a parent's right to sue for the wrongful death of a child. In re Chernega's Estate, 54 Misc.2d 137, 281 N.Y. S.2d 908 (1967); In re Pridell's Estate, 206 Misc. 316, 133 N.Y.S.2d 203 (1954). But see Adkison v. Adkison, 286 Ala. 306, 239 So.2d 562 (1970).

In both Chernega's Estate and Pridell's Estate, a father was held to have abandoned his minor child because he had failed to show any concern about his child or to afford him "any care, training or guidance during his formative years," even though he provided for the child's support according to a court order.

This is not the majority rule. In fact New York seems to be alone in having adopted it. Cases holding contrary include A.A.S. v. R.E.A., 536 P.2d 880 (Colo.App. 1975); Wiedeman v. Mickel, 269 So.2d 53 (Fla.Dist.Ct.App.1972), cert. denied 272 So.2d 818 (Fla.1973); Hill v. Allabaugh, 333 Ill.App. 602, 78 N.E.2d 127 (1948); In re Adoption of Bryant, 134 Ind.App. 480, 189 N.E.2d 593 (1963); Fortino v. Timko, 110 N.H. 200, 263 A.2d 663 (1970); In re Adoption of Walton, 123 Utah 380, 259 P.2d 881 (1953); See Annot., 35 A.L.R.2d 662 (1954); Annot., 53 A.L.R.3d 566 (1973).

There is no single accepted definition of what "abandon" means. However, the element of support is universally held to be a significant factor. Adkison v. Adkison, 286 Ala. 306, 239 So.2d 562; see also Straub v. Schadeberg, 243 Wis. 257, 10 N.W.2d 146 (1943). Our own adoption law recognizes parental rights as long as a noncustodial parent makes substantial contribution to a child's support. See In re Adoption of Clark, 183 N.W.2d 179, 183 (Iowa 1971); In re Adoption of Vogt, 219 N.W.2d 529, 532 (Iowa 1974).

In an annotation at 53 A.L.R.3d 566 (1973), which deals with a parent's right to recover for a child's wrongful death, this definition appears:

"Although the term 'desertion or abandonment of a minor child' has been variously defined by wrongful death statutes, the most frequently adopted definition * * * encompasses conduct on the part of the parent which evinces a settled purpose to forego all parental duties and obligations."

Adopting this rationale, we reach the same result as did the trial court. At no time did James "evince a settled purpose to forego all parental duties and obligations." On the contrary he recognized and discharged one of the most important of these—the duty to support.

There are many circumstances which make Mary Ann's argument appealing, but the authorities are overwhelmingly against her.

We hold the trial court reached the right result. In arriving at this conclusion, we believe it significant that Rick did not exclude his natural father from sharing in the insurance proceeds, although he could have designated his mother as the sole beneficiary. Instead he named as beneficiaries those who were entitled to take "by law." Under the record before us, this includes his natural father.

The judgment is affirmed.

AFFIRMED.