Susan A. HAFLEY, Appellant,

v.

Willie E. McCUBBINS, Mary C. McCubbins and Unknown Defendant, Appellees.

Court of Appeals of Kentucky.

Nov. 2, 1979.

Robert E. Webb, Jr., Louisville, for appellant.

H. Douglas Mann, Allen K. Gailor, Louisville, for appellees.

Before COOPER, LESTER and WILHOIT, JJ.

LESTER, Judge.

This was an interpleader action wherein the trial court entered a summary judgment awarding the proceeds of the decedent's servicemen's group life insurance policy to his stepparents rather than to his natural mother.

The appellant, Susan Albina Darrell, (now Hafley), gave birth to twin boys on December 4, 1956; their father was Morgan Len Bailey. Prior to entering the hospital, the appellant made an arrangement with the appellees whereby the newborns, including the decedent, Donald Daymond Bailey (the surname of the real father), were to come live with and be reared by the McCubbins, because appellant had seven children, and because she was unmarried, was untrained for work and was medically unable to maintain employment. Susan Hafley lived with the appellees for six weeks after Donald and his brother were born, and thereafter moved to quarters of her own leaving the child to be raised as Donald Daymond McCubbins. There is evidence that appellant orally agreed to an adoption by appellees, but due to financial circumstances, this was never accomplished.

At the age of sixteen, the boy was told that appellant was his natural mother, and from time-to-time he would visit her and even reside with her for brief periods of time. Shortly after reaching seventeen, Donald enlisted in the army under appellees' name, but that type of life apparently disagreed with him so he managed to obtain a medical discharge. Returning home, he found that he could not obtain a job. He became restless and unruly to such a point that he found it necessary to leave the McCubbins' home and take up residency with his mother. After becoming involved with the law enforcement authorities, Donald reconsidered the military life and concluded to re-enlist, but in order to do so, he had to use the name of Bailey. In December, 1976, Bailey was killed in a nonmilitary-connected incident.

Pursuant to 38 U.S.C. § 765, et seq., the decedent's life was covered by Servicemen's Group Life Insurance which, in this instance, was in the amount of $20,000.00 issued by The Prudential Insurance Company of America. Being made aware of the factual situation, the carrier filed an interpleader action which had the effect of bringing the parties to this appeal in contention for the funds. The precipitating factors were that the decedent had inserted in the designation of beneficiary the language "By Law" and both Hafley and the McCubbins filed their respective claims for death benefits.

As part of its complaint for interpleader, Prudential set out the pertinent provisions of the definitions section of the congressional act, namely, 38 U.S.C. § 765(9) which provides that "[n]o person who abandoned or willfully failed to support a child during his minority, or consented to his adoption may be recognized as a parent for the purpose of this subchapter."

The appellees filed a "Claim For Funds" to which was attached some twenty-three exhibits, while appellant filed her answer and cross-claim. Both parties filed motions for summary judgment (appellant's being supported by four affidavits) which the court granted to the McCubbins unaccompanied by any specific findings. Appellees had also filed a claim against the estate for funds expended in raising the child and funeral expenses.

The prime issue involved is what is considered to be an abandonment of a child. The United States Code itself sheds no light whatsoever, and the only annotation thereunder refers to *Rahn v. Prudential Insur-*

ance Company of America, 259 N.W.2d 838 (Iowa 1977), to the effect that there is no single accepted definition of the term "abandon," but that the element of support is universally held to be a significant factor. The courts of this jurisdiction have construed the abandonment concept only from the criminal aspect for the purposes of KRS Chapter 199, but never in the field of the civil law. We must, therefore, look to the jurisprudence of our sister states.

We wish to emphasize that we are not concerned here with the best interests of a child since that factor is primarily one to be considered in custody and adoption litigation. Moreover, we hesitate to apply the definitions found in KRS 199.011(5) and KRS 530.040, because these statutes deal with protective services, including adoption, and criminal prosecutions involving a minor child in being. What we seek is an acceptable criteria for civil matters involving recovery of damages or benefits by a parent as opposed to a custodial nonparent where it is alleged that the natural parent has "abandoned" the offspring.

Many elements may, and have been, considered in determining what constitutes abandonment of a child by its parent, such as a course of conduct suggesting a conscious disregard or indifference of parental obligations, *Emmons v. Dinelli*, 235 Ind. 249, 113 N.E.2d 56 (1956); having a child in the care of others on a permanent or indefinite basis, *Finn v. Rees*, 65 Idaho 181, 141 P.2d 976 (1943), although this act must involve more than a mere temporary absence or neglect of duty, 2 Am.Jur.2d *Adoption* § 34 at 889 (1962); the length of time of placement with individuals or an agency; failure to provide support, *Stadler v. Stone*, 412 Ill. 488, 107 N.E.2d 696, 35 A.L.R.2d 653 (1952); and the resumption or nonresumption of the parental obligation, *Re Cozza*, 163 Cal. 514, 126 P. 161 (1912), and *Re Kline's Adoption*, 24 Del.Ch. 427, 8 A.2d 505 (1939). *See also* *Re Burns*, 474 Pa. 615, 379 A.2d 535 (1977).

■ Collected at 1 Words and Phrases, *Abandon; Abandonment* at the subhead-

ings Child-Recovery for Injuries or Death of Child (p. 40) are twelve cases, of which eleven are New York authorities, dealing with wrongful death actions while the remaining one is Texas litigation for injuries received. New York, the same as 38 U.S.C. § 765(9), precluded a parent who had abandoned his child from sharing in the damages resulting from the wrongful death of the child. In construing the term, the New York Court held that it meant neglect and refusal to perform natural and legal obligations to care and support, withholding of parental care, presence, opportunity to display voluntary affection and neglect to lend support and maintenance. *In Re Herbster's Estate*, 121 N.Y.S.2d 360, 362 (1953). It means also the failure to fulfill responsibility of care, training and guidance during the child's formative years, *Pridell v. Reynolds*, 206 Misc. 316, 133 N.Y.S.2d 203, 206 (1954); *Matter Of Commissioner Of Social Services*, 84 Misc.2d 253, 376 N.Y.S.2d 387, 392 (1975). These concepts have been adopted by other jurisdictions. *Matter Of Adoption Of Doe*, (Ct.App.) 89 N.M. 606, 555 P.2d 906, 918 (1976); *Anonymous v. Anonymous*, 25 Ariz. App. 10, 540 P.2d 741 (1975) and *In Re Ayres*, Mo.App., 513 S.W.2d 731, 734 (1974). We believe that the receipt of benefits whether for wrongful death or from a contract of life insurance to be so closely akin that the principles enunciated above should be applicable to both.

■ In the case at bar, the appellant, even prior to the birth, attempted to designate the appellees as the true parents by listing Willie McCubbins as the father and giving the child that surname. Immediately upon leaving the hospital, she placed the boy in the care of appellees where he remained for sixteen years. Even though Donald was not aware of his true parentage for a long period of time, Susan Hafley knew of his whereabouts and made no effort to resume her parental obligations after a great span of indifference as to his care and guidance during his formative years. There is little indication of support

being furnished by the natural mother even to the point of lack of contribution to his funeral expenses. From the standpoint of her intent to abandon her child, we need look no further than her oral agreement to permit adoption by the McCubbins.

■ Based upon the standards hereinabove set forth, it is apparent that the appellant had abandoned her son, which brings into focus the question of to whom are the insurance proceeds payable. In its summary judgment, the circuit court awarded appellees the money "as partial payment of their claim against the Estate of Donald D. Bailey A/K/A Donald D. McCubbins." This approach is the only possible way in which the McCubbins could prevail for those standing in the shoes of persons in loco parentis, or, for that matter, stepparents, are not parents within the meaning of 38 U.S.C. § 765(9). *Prudential Insurance Company v. Ellwein,* 435 F.Supp. 248 (D.C.N.Y.1977). However, Susan Hafley resisted the proof of claim in the record, but had no opportunity to refute it. We believe that the appellees should be required to demonstrate the validity of this type of allegation and its amount if the court gets to that point because it will be recalled that the deceased serviceman designated the beneficiary as "By Law" and it might well be that the trial court would conclude that the funds should be paid to the estate for eventual distribution pursuant to the statutes of this jurisdiction.

Our conclusion is that since appellant abandoned the decedent, she is not entitled to any recovery whatsoever, but since the trial court has not made a determination of either who the proper beneficiaries might be, or the validity of the claim of appellees, there are factual issues remaining.

Therefore, the judgment is affirmed in part and reversed in part, and remanded for further proceedings consistent with views contained in this opinion.

All concur.