[File No. 7287]

MYRON MILLER, Appellant, v. AGNES MILLER, Respondent.

(55 NW2d 218)

162

*Lyche & Lyche,* for appellant.
*A. C. Bakken Jr.,* for respondent.

SATHRE, J. This is an action for divorce brought by the plaintiff Myron Miller against the defendant Agnes Miller. This action was originally commenced July 1947. The complaint alleged extreme cruelty. The defendant did not interpose an answer and the plaintiff obtained judgment by default and a decree of divorce was entered on August 12, 1947. Prior to the entry of the default judgment the parties entered into a property settlement giving to the defendant a small house in the city of Finley and awarding to her the custody of their children. At the time the default divorce decree was entered there were four minor children ranging in ages from four to one year, and the defendant was pregnant with the fifth child.

Thereafter and in March 1948, the defendant made a motion to have the default decree set aside and that she be permitted to interpose answer to the complaint. Her motion was made upon the grounds of fraud on the part of the plaintiff and that by reason of such fraud and through mistake and inadvertence she failed to appear or answer. The motion was granted and the district court made its order setting aside the default decree. The plaintiff appealed to this court and the order was affirmed. That case is reported in 38 NW2d 35, 76 ND 558.

Thereupon the plaintiff served and filed an amended complaint charging defendant with extreme cruelty, alleging that she called him vile names, swore at him, accused him of infidelity, was jealous of him, refused to cohabit with him as husband and wife,

and on various occasions without cause or reason left him for considerable periods of time.

The defendant answered denying the allegations of the complaint, and alleging that between November 1945 and July 1947, the plaintiff at numerous times became angry and cursed and swore at her, used indecent and profane language towards her and called her vile names, and that he was of a quick and bad temper and of a revengeful disposition. The answer further alleged that the plaintiff deserted defendant and her minor children during the month of July 1947, when she was pregnant with her fifth child; that he went to Moorhead, Minnesota, accompanied with one Ruth Hagen and there lived with her in a state of adultery from August 21, 1947 to March 1948 and that plaintiff and Ruth Hagen lived in a state of adultery at various other places until November 1948. Defendant demanded judgment for dismissal of plaintiff's cause of action and that he be required to pay the defendant $25.00 per month for her support and maintenance and $75.00 per month for the support and maintenance of their minor children.

The case was tried on the amended complaint and the answer thereto at Fargo, North Dakota on June 16, 1950 before the Honorable W. H. Hutchinson, one of the judges of the Third Judicial District, sitting at the request of the Honorable John C. Pollock, one of the judges of the First Judicial District. The court found for the defendant and held that the plaintiff had failed to establish a cause of action for divorce and dismissed plaintiff's complaint. Judgment was entered accordingly and plaintiff appealed, and demands a trial de novo.

The plaintiff contends that the court erred in the following particulars:

That the court erred in ordering and entering judgment for dismissal of plaintiff's cause of action, and that the evidence is overwhelmingly against the conclusion and judgment of the court, and that the court erred in weighing and passing on the evidence; in questioning the witnesses towards the end of the trial in asking objectionable and improper questions calling for inadmissible answers; that the attitude assumed by the trial court was dominating, and commanding and insinuating in con-

ducting its examination, resulting in brow-beating and frightening the witnesses; in refusing to grant plaintiff's motion to strike the allegations of recrimination in paragraphs two and three of defendant's answer.

The plaintiff and defendant were married November 5, 1942. There were born to them five children, the eldest being born in December 1942, and the youngest was born in August 1947, all of whom are in the care and custody of the defendant.

At the trial the plaintiff testified in substance as follows:

That he had not lived with the defendant since in the month of July 1947; that they did not "get along" and that defendant had a bad temper, shook her fist at him and called him bad names, nagged him and quarreled with him; that they lived with her parents some three years after they were married; they did not "get along" out there and that they called him a "G— dam German;" that defendant's father would go out a lot of times and get drunk and could not drive his car and defendant would take their car and haul him around, and that this led to trouble between them. He further testified defendant called him every name you could think of and was domineering and commanding, and that once she used the broom on him. They then moved away from her parents to a farm near Finley. That many times she threatened to divorce plaintiff and that sometimes when plaintiff came home she would have his suit case packed and tell him to get out.

Conrad Smithrud a witness for the plaintiff testified that he roomed with the Millers about two months in 1947 and that he heard them quarrel a few times; that defendant had considerable temper, and that he thought that she started the quarrels, and that he had heard her call plaintiff bad names; that she was careless in her housekeeping.

Mervin Stromme, another witness for plaintiff testified that he worked for the plaintiff three weeks during the summer of 1946; that the defendant had a terrific temper; they did not argue in his presence but that he heard them from his room upstairs; he could not hear what they said but he knew they were arguing; that he would say defendant was sloppy in her housekeeping; that the plaintiff and witness would go to town evenings

but that plaintiff never took defendant with him; that plaintiff would drink a little beer during evenings when they went to town; that during the three weeks he stayed with the Millers the plaintiff and he went to town in the evening several times and would return home at nine or ten o'clock and one time they got home at midnight.

The defendant, Agnes Miller, testified in her own behalf substantially as follows:

Plaintiff and defendant were married November 5, 1942; and that they had five children and that they were in her care and custody; that she is receiving $50.00 monthly payments from the plaintiff; that she has to do laundry work to supplement her income and that she is also getting assistance from the Steele County Welfare Board. She never had any trouble with plaintiff until the summer of 1946 shortly before the birth of her fourth child and she asked him if he wouldn't "please stay home." They had no quarrels until 1946, and in these quarrels plaintiff would call her vile names; that she did not start the quarrels; that when he went out he never would tell her where he was going; that he had a violent temper; that in the summer of 1947 when he was working for Dr. Bekker he made a statement implying that he had been intimate with other women, and that on June 10, 1947 he admitted he had a girl in trouble but would not tell who she was. This was before the first divorce complaint was served on her. She testified further that when she was pregnant with her fourth child in the summer of 1946 plaintiff was "running off;" sometimes he would be home at midnight and sometimes at 4 o'clock in the morning. On these occasions she would take the truck and go to her parents in the evenings but she always came home before he did. She denied that she refused to have sexual relations with him until June 10, 1947 when he admitted to her that he had a girl in trouble, and that up to that time their sexual relations were normal; that she did not accuse him of going with other women until he made the admission referred to. She denied that she ever threatened to divorce plaintiff or that she packed his suit case and ordered him to leave.

Plaintiff and his witness testified that the defendant was not

a good housekeeper but do not specify any details. The evidence shows that defendant gave birth to a child every year and that five children were born to her between December 1942 and September 1947. To take care of these children would undoubtedly require a great deal of defendant's time and effort, and undoubtedly would interfere to some extent with her other household duties. It does not appear that plaintiff ever gave her any assistance, but rather that he spent his evenings and leisure time away from home.

Plaintiff's cause of action is based on extreme cruelty. The general rule where cruelty is alleged, as a cause of action for divorce is stated as follows in 17 Am Jur Divorce and Separation, Section 56, page 179.

"It is universally recognized, at least theoretically, that parties cannot be divorced on the ground of cruelty merely because they live unhappily together from unruly tempers or marital wranglings. Married persons must submit to the ordinary consequences of human infirmities and of unwise mating, and the misconduct which will be ground for a divorce as constituting cruelty must be serious. Mere austerity of temper, petulance of manners, rudeness of language, or even occasional sallies of passion, if they do not threaten bodily harm or impairment of health, do not as a general rule amount to cruelty. As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation than are people in other relations of life. The marriage status is not merely contractual so as to entitle each of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes. In short, it is not the policy of the law to grant divorces for postnuptial causes short of marital infidelity, when such causes do not in fact render one of the parties incapable of performing the duties incident to the marriage status. The law authorizes the severance of the matrimonial union only when the conduct of one of the parties renders it impracticable for the other further to perform the marital duties."

The rule thus stated is followed in Henry v. Henry, 77 ND 845, 46 NW2d 701 and Savre v. Savre, 77 ND 242, 42 NW2d 642.

.The testimony of plaintiff's witnesses, Smithrud and Stromme is not of great weight as supporting the testimony of plaintiff. Their testimony covered only short periods of time in 1947 and does not give any details or any specific incidents of misconduct on the part of the defendant. The testimony of the defendant is more reasonable and convincing than that of the plaintiff. Her concern is not only for herself but for the welfare, comfort and protection of her five children of tender years. In contrast plaintiff is interested in being relieved of his marital responsibilities to the defendant in order that he may be free to exploit other matrimonial fields. We are of the opinion therefore that plaintiff has failed to establish by any competent evidence a cause of action for divorce upon the grounds of extreme cruelty as alleged in the complaint.

Since we have held that plaintiff has failed to establish a cause of action by competent evidence it will not be necessary to consider the refusal of the trial court to strike from the answer the allegations of recrimination.

There remains to be considered the objection of the plaintiff to the examination of witnesses by the trial court. Plaintiff contends that such examination was objectionable and improper and called for inadmissible answers.

"The general rule is that a judge presiding on a trial is not a mere moderator, but has active duties to perform without partiality in seeing that the truth is developed; and it is his duty, in the exercise of sound discretion, to elicit the evidence upon relevant and material points involved in the case." Messer v. Bruening, 32 ND 515, 156 NW 241.

"The trial court may properly participate in the examination of witnesses for the purpose of eliciting facts and clarifying the testimony". Pearce v. Hanlon, 60 ND 231, 233 NW 840.

"A trial judge has the right to propound such questions to witnesses as may be necessary to elicit pertinent facts, in order that the truth may be established, although some reviewing courts have declared that the practice of so doing except when absolutely necessary should be discouraged. Accordingly, the

trial court has power to recall a witness who has been examined, and propound questions to him. He may cross-examine a witness, or ask him leading questions. And he may elicit any relevant and material evidence, without regard to its effect, whether beneficial or prejudicial to one party or the other. Indeed, it has been declared to be the duty of the court to propound such questions to reluctant witnesses as will strip them of the subterfuges to which they resort to evade telling the truth. The extent to which such examination shall be conducted rests in the discretion of the judge, the exercise of which will not be controlled unless abused." 58 Am Jur Witnesses, Section 557, page 310.

We have made a careful examination of the record and we fail to find that the learned trial judge unduly participated in the examination of witnesses or manifested a prejudicial attitude towards the plaintiff. It clearly appears that the questions asked were intended to elicit facts to clarify the testimony and make it more definite.

The judgment of the district court is affirmed.

MORRIS, C. J., and BURKE, GRIMSON and CHRISTIANSON, JJ., concur.