In the Matter of Adoption of
A MALE CHILD, Born April 5, 1968

NO. 5583

AUGUST 6, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR, JJ., and SHINTAKU, Circuit
Judge, Assigned by Reason of Vacancy

OPINION OF THE COURT BY OGATA, J.

The petitioner in this case is seeking to adopt a male minor child (hereinafter referred to as "subject child"). The subject child's natural mother who is the petitioner's wife gave her consent to the adoption. The subject child's natural father refused to consent and opposed the petition. The Family Court for the First Circuit, after a hearing, granted the petition for adoption and the non-consenting natural father now appeals. We reverse.

The natural parents were married for the first time on June 25, 1957, divorced in October 1962, remarried on January 7, 1967, and divorced again on July 6, 1970. A daughter, who is not the subject of the present petition, was born on July 27, 1958, during the first marriage. The subject child was born on April 5, 1968, during the second marriage. Immediately prior to June 1969, the natural parents and their two children lived in Wichita Falls, Texas.

The Family Court (hereinafter referred to as "trial court" or "court below") found that the natural father's consent was unnecessary, under HRS § 578-2(b) (2)[1] (1974 Supp.), because he failed to communicate with the child for a period of

---

[1] HRS § 578-2(b) (2) (1974 Supp.) reads as follows:

"(b) Persons as to whom consent not required. Consent to adoption is not required of:

\*　　　\*　　　\*　　　\*　　　\*

at least two years from June 1969 until July 1971. The trial court found that the natural father visited the subject child and his sister at the home of the children's paternal grandparents in Refugio, Texas, on one occasion sometime between June 1969 and June 1970. The trial court held: "The finding that the natural father made one personal visit with the subject child during a two year period constitutes a token form of communication." The trial court concluded that the consent of the natural father was, therefore, unnecessary.

The natural parents separated in June 1969. The mother, with the natural father's knowledge, took the two children to visit their paternal grandparents in Refugio, Texas. The natural father was supposed to telephone the mother at the grandparents' home to make sure the family had arrived safely. Instead, the natural father immediately left for work in Kansas. After two or more days passed without a telephone call, the mother called the office of the company which employed the natural father. She was told that he was no longer employed there and that he had left no forwarding address. The mother and the children then returned to their home in Wichita Falls, Texas, and the mother found that her husband was gone. She further found that a finance company had repossessed all of the furniture and household goods. The only possessions remaining were clothes and a set of dishes. The mother decided to take the children back to the paternal grandparents in Refugio and leave them there while she sought employment in Brownsville, Texas, where her own mother resided.

From June 1969 to August 22, 1970, the mother lived and worked in Brownsville. In the meantime, from June 1969 to June 1970, the children lived with their grandparents in Refugio. The mother visited the children on weekends whenever possible. The trial court found that the natural father did not write or telephone the children that year.

---

(2) A parent of a child in the custody of another, if the parent for a period of at least two years has failed to communicate with the child when able to do so, or for a period of at least one year has failed to provide for care and support of the child when able to do so, as required by law or judicial decree."

In June 1970, after the end of the school year, the mother took the children to live with her in Brownsville. She divorced the natural father on July 6, 1970, and married the petitioner on July 19, 1970. The Texas divorce decree awarded to the mother the care, custody and control of the children; and since this decree was not based upon personal service of summons, it could not and did not require the natural father to pay for the support and maintenance of the children. The petitioner, the mother and the two children moved to Hawaii on August 22, 1970.

The trial court further found that the natural father did not communicate with his son again until July 1971. Since the paternal grandparents knew the whereabouts of the child in Hawaii, the trial court held that it was possible for the natural father to communicate with the subject child. The trial judge deemed it unnecessary to make any findings with regard to the time period from July 1971 to March 1973, when the present petition for adoption was filed, because he held that the petitioner had already established that the natural father failed to communicate with the subject child for at least two years during the period of time from June 1969 to July 1971.

In this appeal the natural father contends that the court below erred in holding that his consent to the adoption of his minor child in the custody of another was not required because he failed to communicate with such child for a period of at least two years when able to do so within the meaning of HRS § 578-2(b) (2) (1974 Supp.).

HRS § 578-2(a) (1974 Supp.) requires that unless consent to the adoption of a child by each parent is not required under subsection (b) of that section, a petition to adopt a child may be granted only if such consent has been given. Consent of the parents or the legal guardian of the child is ordinarily a prerequisite to adoption. *Re Adoption of Male Minor Child,* 50 Haw. 255, 438 P.2d 398 (1968); *Small v. Andrews,* 530 P.2d 540 (Or. App. 1975); *In re Adoption of A.J.N.,* 525 P.2d 520 (Alaska 1974); *In re E.C.N.,* 517 S.W.2d 709 (Mo. App. 1974); *In Re Harshey,* 40 Ohio App.2d 157, 318 N.E.2d 544 (1974); *Cantrell v. Talley,* 291 So.2d 462 (La. App. 1974); *Huey v.*

*Lente,* 85 N.M. 585, 514 P.2d 1081, reversed on other grounds, 85 N.M. 597, 514 P.2d 1093 (1973); *In Re Cech, 8* Ill. App.3d 642, 291 N.E.2d 21 (1972); *In Re Adoption of K.,* 417 S.W.2d 702 (Mo. App. 1967).

HRS § 578-2(b) (2) (1974 Supp.) provides explicitly that consent to the adoption of a minor child who is in the custody of another need not be given by a parent, if such parent for a period of at least two years has failed to communicate with such a child when able to do so, or for a period of at least one year has failed to provide for care and support of such child when able to do so, as required by law or judicial decree.

Thus at the threshold we are confronted with the determination of the meaning of the term "has failed to communicate" as used in the above provisions of sub-paragraph (2) of subsection (b) of the statute which was enacted by S.L.H. 1969, Act 183. We are not here required to apply this statute insofar as the obligation on the part of a parent to provide for care and support of his child when he is able to do so.[2] In 1969, just prior to the effective date of this act, HRS § 578-2 required that written consent to adoption shall be given by each living parent who is not mentally ill or incompetent to the extent requiring institutional care or otherwise incapacitated from giving consent, or who has not abandoned the child for a period of six months, or who has not voluntarily surrendered the care and custody of the child to another for a period of at least two years, or whose parental rights have not been otherwise legally terminated in accordance with law.

Obviously this new legislation clarified and clearly identified those situations in which parental consent may be dispensed with. The abandonment is not specifically used or

---

[2] Petitioner filed in this case on June 21, 1973, an amended petition in which he alleged in paragraph 7: "Such written consent is not required, or it may be dispensed with by reason of the fact, to be proved at the hearing of this petition, that the parent has failed to communicate with the child when able to do so for a period of at least two years while the child was in the custody of another; that the parent voluntarily surrendered the care and custody of the child to another for a period of two years; and that the parent has failed to provide for care and support of the child for a period of at least one year when able to do so as required by law or judicial decree." However this amended petition was withdrawn on June 27, 1973, at the commencement of the hearing.

mentioned in HRS § 578-2(b) as amended by the 1969 Act. The examination of the relevant portion of the 1969 Senate Judiciary Committee Report on S.B. 606,[3] which became S.L.H. 1969, Act 183, shows that the legislature[4] intended to define abandonment under subparagraph (2) of subsection (b) of HRS § 578-2 (1974 Supp.) by spelling out therein the component factors of abandonment, the proof of any of which would conclusively establish that a parent who has been guilty of such conduct is not required to consent. This legislative definition of the concept of abandonment is similar to that expressed by this court about a year prior to the amendment. We said in *Re Adoption of Male Minor Child, supra,* 50 Haw. at 257, 438 P.2d at 400 as follows:

"What then is abandonment? Without question abandonment is conduct. The typical kinds of conduct are set forth in the first test of *Tom:* the withholding of parental presence, love, care, filial affection, and support and maintenance. In addition, the conduct on the part of the parent must be intentional, conduct which shows a settled purpose to relinquish all parental rights in the child."

Lack of communication by a parent with a child which is prolonged for a considerable time, though the parent is able,

---

[3] See Senate Journal 1969, p. 977, Judiciary Stand. Com. Rep. 243 on S.B. 606, which reads in part as follows:
"b. Subsection (b) of Section 331-2 of RLH '55 enumerates the persons as to whom consent and notice are not required and adds the following:
1. a parent who deserts a child without affording means of identification for 90 days; for example, the typical foundling case;
2. a parent who abandons a child either by:
(a) failing to communicate with the child for at least two years when able to, or;
(b) failing to provide care and support of the child for at least one year when able to do so.
With respect to item No. 2 above, it should be noted that we have never had an adequate statutory definition of abandonment. As a result, under the present law, reliance has been primarily on case law, which varies widely on the mainland. The aforesaid provisions set forth a specific definition of abandonment framed after considerable work by the American Bar Association as well as the Adoption Committee of the State Commission on Children and Youth."

[4] The Judiciary Committee Report of the House of Representatives on S.B. 606 is almost identical in language with Senate Judiciary Committee Report on this bill. See 1969 House Journal p. 896, Stand. Com. Rep. 710, Judiciary.

is closely related to abandonment of the child, justifying a finding of conduct by a parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. It was so held in *In re Adoption of a Minor by Delia A. Christian,* 184 So.2d 657 (Fla. App. 1966). The court said in that case: "The contact between the natural mother and the child was most infrequent. On one occasion three or four years elapsed before a visit. She had not seen or written to the child for a period of two or three years prior to this proceeding. It is our view that the record reveals such a lack of interest as to constitute an abandonment of the child by the natural mother." 184 So.2d 658. *Accord, Sernaker v. Ehrlich,* 86 Nev. 277, 468 P.2d 5 (1970); *In Re Adoption of "Anonymous",* 336 N.Y.S.2d 364, 71 Misc.2d 448 (1972). Of course, under HRS § 578-2(b) (2) (1974 Supp.) there is no requirement that abandonment by a parent be found to dispense with his consent; the court is authorized to dispense with a parent's consent if it finds that such a parent has failed to communicate with, or provide for care and support of his child when able to do so.

Accordingly, we hold that the phrase "has failed to communicate" as used in HRS § 578-2(b) (2) (1974 Supp.) means the failure on the part of a parent who is able to do so, either through neglect or refusal, to maintain any contact which would provide the opportunity to express or to show parental presence, concern, love, care and filial affection to his child. *Re Adoption of Male Minor Child, supra, Adoption of Tom Minors,* 37 Haw. 532 (1947); *In re Adoption of a Minor by Delia A. Christian, supra; Sernaker v. Ehrlich, supra; In Re Adoption of "Anonymous", supra.* The child with whom the parent has failed to communicate must, of course, be in the custody of another for a period of at least two years.

The uncontroverted testimony establishes, and indeed the trial court found that the natural father visited the children in person at the home of the paternal grandparents sometime between June 1969 and June 1970. The trial court deemed this visit "token communication."[5] We hold that this

---

[5] *See* In Re Adoption of R.R.R., 18 Cal. App.3d 973, 96 Cal. Rptr. 308 (1971).

characterization is erroneous. While we might deem a single card, a single brief letter or note, or a single telephone call to a child within a two year period de minimis or mere token communication,[6] for the purposes of HRS § 578-2(b) (2) (1974 Supp.), we regard an actual visit by a parent with a child to be substantial and meaningful contact.[7] The effort and time required, the level of concern manifested, and the quality of communication possible is generally greater in a personal visit than in a letter, card or telephone call. A personal visit by a parent can also convey the parental feeling of closeness, warmth, love and affection to a child. We do not herein decide what level of communication is necessary to prevent dispensing with parental consent where personal visits are not possible and other media must be used. We do, however, hold that a personal visit made by a parent to his child in the absence of any expressed intent to relinquish all parental claims is at least communication within the meaning of that word as used in HRS § 578-2(b) (2) (1974 Supp.).

We therefore hold that after a careful review of the record, the petitioner has failed to meet his burden of proving that the natural father has failed to communicate with the child sought to be adopted, which would dispense with the consent of a non-consenting natural parent. *Re Adoption of Male Minor Child, supra; Berry v. Letchworth,* 527 P.2d 145 (Or. App. 1974); *Jordan v. Hancock,* 508 S.W.2d 878 (Tex. Civ. App. 1974); *Townsend v. Curtis,* 15 Ill. App.3d 209, 303 N.E.2d 566 (1973); *In Re Adoption of Anonymous,___Ind. App.___, 302 N.E.2d 507 (1973); In Re Beshures,* 41 A.D.2d 1016, 343 N.Y.S.2d 720 (1973); *In Re Cech, supra.*

Reversed and decree is vacated with directions to dismiss the petition.

*Leslie T. Bennett (Bennett & Ornelles* of counsel) for respondent-appellant.

*Marilyn Van Winkle* for petitioner-appellee.

---

[6] *See* In Re Carson, 76 Nev. 446, 357 P.2d 591 (1960).

[7] *See* W. v. G., 34 N.Y.2d 76, 312 N.E.2d 171, 356 N.Y.S.2d 34 (1974).