Wesley Dean MORTENSON,
Petitioner and Appellee,

v.

T. N. TANGEDAHL, as Executive Director of the Social Service Board, State of North Dakota, Respondent,

and

Terry Baustad, Respondent and Appellant.

In the Matter of the ADOPTION OF Laurie Lynn MORTENSON and Daryn Gene Mortenson, Minors.

Civ. No. 10077.

Supreme Court of North Dakota.

March 18, 1982.

Robert W. Harms of Harms, Leier & Evenson, Williston, for petitioner and appellee.

John H. MacMaster of MacMaster & Bonner, Williston, for respondent and appellant.

VANDE WALLE, Justice.

Terry Baustad appealed from a final decree of adoption[1] entered by the district court of Williams County wherein his parental rights as the natural father of two minor children were terminated and their adoption by Wesley Dean Mortenson was approved. We affirm.

Terry Baustad and Sharon Baustad were formerly husband and wife and two children were born of their marriage. After nearly 12 years of marriage the couple was divorced and Sharon was granted custody of the two minor children subject to Terry's reasonable visitation rights. Terry was also ordered to pay child support of $150 per month. In March of 1980, Sharon married Wesley Mortenson. In March of 1981, Wesley petitioned for adoption of Terry and Sharon's two minor children. The petition for adoption alleged that Terry, the natural father of the children, had not given his consent to the adoption but that such consent "is excused under North Dakota Century Code 14–15–06(1)(b); specifically, Terry Baustad has for a period of at least one year failed significantly, without justifiable cause, to communicate with the children or to provide for the care and support of the children as required by law and decree."

Terry filed a response to the petition for adoption in which he denied Wesley's allegation of failure to communicate with the children, and alleged that his consent to the adoption was not excused, that he had provided for the care and support of the children and had communicated with the children regularly since he was divorced from Sharon, and asked that the petition for adoption be dismissed. On May 15, 1981, a notice that a hearing on the petition was scheduled for July 7, 1981, was issued to the parties by the trial court. Terry failed to appear at the hearing on July 7, but his counsel was present and requested a continuance to permit Terry to be present to testify. The request for continuance was denied and the hearing proceeded. Terry's mother and sister were called as witnesses by Terry's counsel. The hearing resulted in the decree of adoption from which this appeal is taken. Subsequent to the time the district court issued the decree Terry moved the court to reconsider its findings and to receive additional evidence.[2]

Terry raises three issues on appeal:

1. The district court erred in not granting Terry's motion to reconsider its findings and to receive additional evidence.

2. Wesley failed to meet his burden of proving the natural father failed to significantly communicate with the children sought to be adopted.

3. The district court erred in finding that the consent of the natural father to the adoption was not required.

■ The first issue raised by Terry amounts to an attack on the determination of the trial court to deny the motion of Terry's counsel for a continuance due to

---

1. Section 14–15–15(1), N.D.C.C., provides:
   "1. An appeal from any final order or decree rendered under this chapter may be taken in the manner and time provided for appeal from a judgment in a civil action."

2. We find no disposition of the motion to reconsider in the record but both parties treat the motion as having been denied and we assume for our purposes that the motion was denied.

Terry's absence from the hearing. Section 14–15–13(2), N.D.C.C., permits the trial court to continue the hearing on the petition for adoption from time to time to permit further observation, investigation, or consideration of any facts or circumstances affecting the granting of the petition. We believe it is important that a natural parent whose parental rights are to be terminated by a decree of adoption be given the opportunity to appear at the hearing on the petition for adoption. We do not, however, conclude that the right of the parent to appear and testify at the hearing is so absolute that a trial court must grant a continuance as a matter of law if the parent fails to appear. Rule 40(d), N.D.R.Civ.P., provides that no continuance of trial dates will be given unless formally approved by the trial judge scheduled to hear the case; that a request to continue a trial must be made within 10 days after receipt of notice of trial given by the court; but if unavoidable circumstances should arise, the trial judge may consider waiving the 10-day requirement. In this instance Terry argued that he was involved in an accident the day before the scheduled hearing. The hearing was scheduled for Tuesday, July 7, 1981. Terry's counsel, in his motion for continuance, stated:

"I have tried diligently since last Thursday, including telephoning his residence and [sic] estimated twenty different times and driving by his home. And I have been unable to visit with him since that time.

"And this morning I did contact his employer and was told over the telephone that he had an accident in operating a crane, an oilfield crane yesterday in the Belfield area. And perhaps this is the reason for his delay in coming back to Williston."

■ Thus Terry's counsel had attempted to contact his client for five days prior to the hearing. The accident referred to did not take place until the day before the hearing and that accident did not involve personal injury to Terry. Terry's counsel would have been unaware of the reason for Terry's failure to appear had counsel not contacted Terry's employer to determine his whereabouts. Such action does not, in our mind, indicate grave concern on Terry's part about the scheduled hearing or his participation therein. Furthermore, the affidavit submitted by Terry to the trial court in support of his motion to reconsider findings and receive additional evidence sheds no additional light on Terry's failure to contact the court or his counsel to explain that he would be unable to be present, nor does it set forth any of the facts to which Terry would testify if the motion were granted. In the affidavit Terry merely stated that he believes his testimony would constitute important evidence for the court to consider. Terry's mother and sister were called as witnesses by Terry's counsel and did testify to Terry's love for his children and his desire that the adoption not be approved. Although, as we have said, we believe it is important for a natural parent whose parental rights are to be terminated by a decree of adoption to be given the opportunity to appear at the hearing, in view of these facts we cannot conclude that the trial court abused its discretion in refusing to grant a continuance or in denying the motion to reopen the hearing for the purpose of receiving Terry's testimony.

The second and third issues may be considered together. North Dakota has enacted the Revised Uniform Adoption Act as Chapter 14–15, N.D.C.C.[3] Section 14–15–

3. Effective July 1, 1981, an additional subdivision, subdivision j, was added to subsection 1 of Section 14–15–06, N.D.C.C., as to persons to whom consent to adoption is not required. That subsection provides that the consent to adoption is not required of:

"j. A parent of the minor, if the failure of the parent to consent is excused by the court in the best interest of the child by reason of

the parent's prolonged unexplained absence, unavailability, incapacity, or significant failure, without justifiable cause, to establish a substantial relationship with the minor or to manifest a significant parental interest in the minor, or by reason of the inability of the court to identify the parent."

The adoption petition was filed prior to July 1, 1981, and did not allege this provision as a

05(1)(b) provides that unless consent is not required under Section 14–15–06, a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by the father of the minor. Section 14–15–06 sets forth a series of situations in which the consent to adoption is not required. Subsection 1 of Section 14–15–06 provides that consent to adoption is not required of, among others:

"b. A parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause (1) to communicate with the child or (2) to provide for the care and support of the child as required by law or judicial decree."

In this instance, as we have already noted, the petition for adoption alleged that Terry's consent to the adoption was not necessary because it was excused under Section 14–15–06(1)(b) as a result of his failure to significantly, and without justifiable cause, communicate with the children. There is no doubt that the decree of adoption effectively terminates Terry's parental rights. *Kottsick v. Carlson,* 241 N.W.2d 842 (N.D.1976). In *Kottsick* this court considered an appeal from a judgment denying a petition for adoption. The opinion considered the meaning of the provisions of Section 14–15–19(3)(c), a part of the adoption Act which permits the termination of parental rights if "in the case of a parent not having custody of a minor, his consent is being unreasonably withheld contrary to the best interest of the minor." In *Kottsick* this court concluded that the term "custody" as used in Section 14–15–19(3)(c) does not have the same meaning as it has in divorce proceedings and divorce decrees. The rationale of that opinion is that something more than the best interest of the minor, as that term is used in custody proceedings in divorce actions, is necessary to terminate parental rights. The court, after reviewing decisions from other States, observed:

"If any conclusion can be drawn from the case law under these statutes, it is that the courts are reluctant to terminate parental rights without a showing of misconduct or neglect on the part of the natural parents, even though the statute states that the best interests of the child are to be the sole or predominant determinant." 241 N.W.2d at 851.

The court concluded:

"After reviewing the basis for the case law as it has been developed over the years, it appears that the grounds for termination of parental rights must rest upon the attitude, conduct, ability, and such other matters relating to the parent's duties, responsibilities, and care for the child which may be, and frequently are, collectively referred to as 'fitness.' The relationship of parent and child consisting of a bundle of essential human rights necessary for the preservation of society must be carefully balanced and jealously guarded. There is a vast difference between the granting of 'custody' in a divorce action and the 'termination of parental rights.' The terms 'custody' and 'best interests of the child' have become terms of art which reflect and convey certain meanings in divorce proceedings. 'The best interests of the child' in termination of parental rights, in connection with adoption, takes on another meaning which includes, among other things, the total relationship between child and parent pertaining to and involving heterogeneous values, rights, duties, and concepts." 241 N.W.2d at 853.

*Kottsick,* as we have noted, involved the construction of a provision of our law which, in effect, permitted the court to terminate parental rights of a noncustodial parent if the parent were withholding his consent to the adoption contrary to the best interests of the child. The statute, if construed as the appellants therein contended, could have resulted in a termination of parental rights of a parent who, in a divorce proceeding, was given visitation rights but

reason for not requiring Terry's consent to the adoption nor does it appear this provision was

considered by the trial judge in his determination that Terry's consent was not required.

not day-to-day physical custody of a child without the "fitness" of the parent ever being considered. Here, we are concerned with a statute which does involve "fitness" of the parent, i.e., a statute which provides for termination of parental rights of a noncustodial parent who has failed significantly without justifiable cause to communicate with the child for a period of at least one year. In *Matter of Adoption of Gotvaslee*, 312 N.W.2d 308 (N.D.1981), we considered this provision but under a ruling by the district court that "abandonment or some other basis must be shown and that parental rights must be terminated before an adoption can be granted in this matter." 312 N.W.2d at 311. In *Gotvaslee* the trial court determined that the natural father had abandoned his children. The trial court terminated parental rights and granted the adoption and the appeal was from that judgment. Our decision in *Gotvaslee* is not particularly relevant in this instance because the issue on that appeal was whether or not the facts indicated abandonment as specified by Section 14–15–06(1)(a) and Section 27–20–44(1)(a)[4] as a ground for termination of parental rights. It is not our purpose to rewrite legislative enactments to coincide with what might be our views on a particular subject. The Legislature has specifically provided that it is not necessary to obtain the consent to a petition for adoption of a father who for a period of one year has failed significantly without justifiable cause to communicate with the child.

Additional subsections of Section 14–15–06 specify that it is not necessary to obtain the consent of a father who has abandoned the child, who has failed to provide for the care and support of the child as required by law or judicial decree for a period of at least one year, or whose parental rights have been terminated by order of the court. To hold that in addition to the provision that consent is not required if the parent has failed significantly without justification for a period of at least one year to communicate with the child, the provision that parental rights must be terminated under a separate subdivision or under Chapter 27–20, N.D.C.C., in order that the petition for adoption be approved would be to impose a condition not contemplated by the legislation.[5] Thus, contrary to the situation in *Kottsick, supra*, where there were constitutional issues involved if a noncustodial parent's consent was deemed unnecessary simply because of the best interests of the child, here we have no such constitutional considerations. Furthermore, the standard set forth in the statute, i.e., failure to significantly communicate with the child, is concerned with the fitness of the parent. We conclude that Terry's consent to the adoption is not necessary if the facts sustain the conclusion that he has failed significantly and without justification for a period of one year to communicate with his children.

Do the facts sustain such a conclusion? The trial judge did not prepare findings and

4. Section 14–15–06(1)(a), N.D.C.C., provides:

"1. Consent to adoption is not required of:

"a. A parent who has deserted a child without affording means of identification, or who has abandoned a child."

Section 27–20–44(1)(a), N.D.C.C., provides:

"1. The court by order may terminate the parental rights of a parent with respect to his child if:

"a. The parent has abandoned the child; . . ."

5. The Commissioners' Note to this section of the uniform law reads, in part:

"This section deals primarily with legal excuses for not offering the consent of a parent or guardian. In an agency placement the excuse most likely will be that in subsections (a)(4) and (5) where prior to the proceeding the parent has relinquished his rights *or the*

rights have been terminated under section 19 or other appropriate judicial proceedings.*

*"Subsections (1) and (2) excuse termination of parental rights in a separate proceeding* where the child has been abandoned or the parent has deserted the child. . . .

Subsection (a)(2) is designed to permit the court to find that consent to adoption is unnecessary without finding that the parent has 'abandoned' the child by the court finding the existence of certain facts of a prescribed duration." [Emphasis added.] Uniform Adoption Act, Sec. 6, 9 U.L.A. 27.

Any provision which is a part of a uniform statute shall be so construed as to effectuate its general purpose to make uniform the law of those States which enact it. Sec. 1–02–13, N.D.C.C.

conclusions of law but in his decision, dictated into the transcript of the hearing, the trial judge stated:

"As to Mr. Baustad, the Court is satisfied that his consent is not required in this case.

"The law that we are dealing with provides in part that consent to adoption is not required of Terry if he has failed to communicate with the children for a period of one year and his failure is significant and without justifiable cause.

"The facts to the Court indicate that during the year preceding the filing of the Petition, Terry saw the children only twice. That is not a significant communication or contact with his children during a twelve-month period.

"One of the incidents occurred in April or March of 1980 and in fact was triggered by a call from the children to Terry for the purpose of visitation and playing with their cousins at his sister's nearby farm.

"A similar incident, day incident, occurred in November of 1980 when he again took the children so they could play with their cousins, two cousins, at the sister's nearby farm.

"With only such communications or contact from Terry during that year, the Court finds the same to be inadequate and in effect amounting to a parental neglect.

"The question is: Is such failure accompanied, however, by some justifiable cause? In this situation it appears that Terry resides only twelve blocks away from the children. It further appears that the two contacts which resulted in his seeing his children during this period were contacts initiated by the children themselves."

We do not understand Terry's position to be that the facts as found by the trial court are erroneous.[6] Rather, he argues that based on these facts the conclusion of the trial court that Terry failed significantly and without justification, for a period of one year, to communicate with his children is not supported by the facts. Terry argues that communications with his children as specified in the trial court's oral findings are sufficient communications to obviate the statute. In support of his contention Terry refers us to decisions from several other jurisdictions involving identical or similar statutes. Some of the decisions he attempts to distinguish.

In *In re Adoption of Male Child*, 56 Haw. 412, 539 P.2d 467 (1975), the Hawaii Supreme Court held that the term "has failed to communicate" as used in Hawaii's statute [HRS § 578–2(b)(2) (1974 Supp.)] means "the failure on the part of a parent who is able to do so, either through neglect or refusal, to maintain any contact which would provide the opportunity to express or to show parental presence, concern, love, care and filial affection to his child." 539 P.2d at 471. In that instance the father had visited the children once during a one-year period. The trial court deemed that visit a token communication but the Hawaii Supreme Court disagreed, stating:

"We hold that this characterization is erroneous. While we might deem a single card, a single brief letter or note, or a single telephone call to a child within a two year period de minimis or mere token communication for the purposes of HRS § 578–2(b)(2) (1974 Supp.), we regard an actual visit by a parent with a child to be substantial and meaningful contact. The effort and time required, the level of concern manifested, and the quality of communication possible is generally greater in a personal visit than in a letter, card or telephone call. A personal visit by a parent can also convey the parental feeling of closeness, warmth, love and affection to a child. We do not herein decide what level of communication is necessary to prevent dispensing with parental consent where personal visits are not possible and other media must be used. We do, however, hold that a personal visit made by a parent to his

---

6. Both parties agree that this court's review is governed by Rule 52(a), N.D.R.Civ.P. *Matter of Adoption of Gotvaslee*, 312 N.W.2d 308 (N.D.1981).

child in the absence of any expressed intent to relinquish all parental claims is at least communication within the meaning of that word as used in HRS § 578–2(b)(2) (1974 Supp.)." [Footnotes omitted.] 539 P.2d at 471–472.

We agree with the Hawaii court that a personal visit may be considerably more meaningful in communication between a child and a parent than would be a series of birthday cards or Christmas cards with printed messages and little else. However, the Hawaii decision is distinguishable from the instant case in several respects: (1) The Hawaii statute, Section 578–2(b)(2), H.R.S. (1974 Supp.), did not contain the word "significantly," i.e., communication between parent and child was sufficient to obviate the statute; (2) More important, however, in the case before the Hawaii court the evidence apparently indicated that the father initiated the one visit with the children which the Hawaii court determined to be adequate communication, whereas in the instant case the evidence discloses that almost without exception the communication between Terry and the children was instigated by the children, not Terry; and (3) In the Hawaii case the father lived away from the city in which the children were residing, whereas Terry lived within 12 blocks of the children, in the home the family occupied while he and Sharon were married, from the time of the divorce to the time of the hearing on the petition.

In *Prescott v. Judy*, 157 Ga.App. 735, 278 S.E.2d 493 (1981), the Georgia Court of Appeals, in affirming a decree of adoption over the objection of the natural mother, discussed the meaning of the term "significantly" in a statute [Ga. Code Ann. § 74–405(b)] similar to that of North Dakota. The Georgia court, citing Webster's New International Dictionary, 2d Ed. Unabridged, held that the term "significant" means important or momentous, and stated:

"Considering that the former failure to provide support provision had been interpreted so that a very minor support payment was sufficient to avoid the provision and require parental consent, as well

as the definition of significant, it is obvious that the intent of the new statutory language is to require more, or significant, support before parental consent would be required. This standard also applies to the communication with the child provision." 278 S.E.2d at 494.

The court in *Prescott* quoted with approval from a decision of the Georgia Supreme Court in *Chandler v. Cochran*, 247 Ga. 184–185, 275 S.E.2d 23, 27 (1981):

"As for the phrase 'failed significantly,' this admittedly allows a degree of latitude for the trial judge's discretion, but we believe that such discretion is necessary and desirable in adoption proceedings, and was intended by the legislature to be applied to the particular facts in each individual case."

In *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929, 934 (1979), the Arkansas Supreme Court in considering the term "failed significantly," as applied to support of a child, stated:

"The question was whether the father has 'failed significantly' for a period of one year to support his child 'without justifiable cause.' 'Failed significantly' certainly does not mean 'failed totally.' It only means that failure to support must be significant, as contrasted with an insignificant failure. It denotes a failure that is meaningful or important. Webster's New International Dictionary, 2d Ed."

Although the petition for adoption alleges failure to communicate with the children rather than failure to support them as the basis for Terry's consent to the adoption not being required, these definitions of "failed significantly" as used in statutes similar to ours in other jurisdictions are persuasive. It is apparent to us, when we apply the definition of the term "significantly" to the facts in this case, that the trial court did not err in concluding that the communication between Terry and his children, although not failing totally, was not important or momentous.

█ The trial judge found that during the year preceding the filing of the petition

for adoption, Terry saw the children only twice and one of those instances was initiated by the children. We agree with the trial judge's conclusion that this was not a significant communication or contact with his children. Additionally, there appears to be no justifiable cause. Although Terry was out of town because of his employment, he was not absent for continued long periods of time. Terry lived only 12 blocks from the children. This fact alone would have indicated more frequent visits and communication than would be the case where Terry resided in a different town or in a different State than the children. The evidence supports a conclusion that Sharon placed no barriers in the way of Terry's communication with his children. His lack of communication with his children under these favorable circumstances is convincing evidence of his indifference to the children.

Although there is some dispute in the evidence, it appears that Terry was, at times, delinquent in making the child-support payments required by the divorce decree. After the adoption petition was filed he brought those payments current. The issue of the need for Terry's consent to the adoption is not based upon his failure to support his children but rather on lack of communication with them. Failure to provide support and care for the children as required by law or judicial decree is a separate basis for not requiring Terry's consent to the adoption. Sec. 14–15–06(1)(b)(2), N.D.C.C. The evidence in the record indicates that there were several instances in which Terry made the payments only at the prodding of the clerk of district court, to whom the payments were to be made. However, even if we assume the payments were all timely made, we agree with the statement of the Missouri Court of Appeals in *Lambertus v. Santino*, Mo.App., 608 S.W.2d 502, 506 (1981):

"If appellant had timely made every payment he would be entitled to no special credit, because these payments were not voluntarily made. They were made under compulsion of a court order. He was doing only what he had to do. More to the point, more important than sending money, is the matter of communication— communication of love and affection by a parent to a child; the parent's expression of interest in the child and his world; the communicated desire to be in the child's company whenever possible; the development of a commonality of interest and an empathy with him. These are the things that count heavily in a situation where by force of circumstances personal visitation is impossible."

If these matters are important where, by force of circumstances, personal visitation is impossible, the lack of them becomes more significant where the children reside a mere 12 blocks from the home of the parent opposing the adoption.

There is evidence in the record that at one time shortly after the divorce Terry was concerned primarily with the payments he was required to make for the support of his children. Sharon testified that Terry told her that if she remarried he wanted her new husband to adopt the children so that he would be relieved of child-support payments. Sharon further testified that after she married Wesley she talked with Terry about the adoption and at that time he wasn't sure that he would like the children to give up the name Baustad but he did say he wished Sharon and Wesley would provide the total financial support for the children. Terry's mother testified that when the children were a little older Terry would like to have them stay with him.

We are aware of our previous statements that the relationship between a parent and a child is one of the strongest and most basic relationships that human beings enjoy, that severing the relationship by the State requires careful action by the State, mindful of the consequences in the light of all the circumstances, and that the parent's right to the custody and companionship of his or her children, although not absolute, is recognized as one of constitutional dimension. *Matter of Adoption of Gotvaslee, supra; Kottsick v. Carlson, supra.* We have examined the record and the findings and conclusions of the trial judge with these statements in mind. We believe that the

findings of the trial judge are not clearly erroneous; that the trial judge's conclusion that Terry failed to communicate with the children for a period of one year, and that his failure is significant and without justifiable cause, is supported by the findings; and that the trial judge's determination that Terry's consent to the adoption is not required is correct.

The decree of adoption is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.