Robert PRITCHETT and Meredyth Lorraine Pritchett, Husband and Wife, Petitioners and Appellees,

v.

EXECUTIVE DIRECTOR OF the SOCIAL SERVICE BOARD OF The STATE OF NORTH DAKOTA or his designee, Respondent,

and

Eugene D.J. Korner, Respondent and Appellant.

Civ. No. 10183.

Supreme Court of North Dakota.

Oct. 20, 1982.

Bruce Montgomery, of Teevens, Johnson & Montgomery, Minot, for petitioners and appellees.

K.M. Knutson, Minot, for respondent and appellant.

## VANDE WALLE, Justice.

Gene Korner appealed from the district court judgment terminating his parental rights as the natural father of Kimberly and granting a decree of adoption naming Robert Pritchett as Kimberly's adoptive father. Robert is the husband of Meredyth, Kimberly's mother. We affirm.

Gene and Meredyth were married in 1975 and divorced in 1978. Meredyth was granted custody of their daughter, Kimberly, who was born in 1975. Gene was ordered to pay child support of $100 per month. In 1980 Meredyth married Robert Pritchett.

In 1981 Meredyth petitioned for a termination of Gene's parental rights, alleging that he never paid child support, that he significantly failed to communicate with .Kimberly, and that he abandoned Kimberly. During oral argument, Meredyth focused on abandonment as the ground upon which she contended Gene's parental rights should be terminated.[1] At the same time Meredyth petitioned for the termination of Gene's parental rights, Robert petitioned to adopt Kimberly. In his response Gene opposed Robert's adoption of Kimberly. Gene also denied abandoning Kimberly.

The trial court found that Meredyth received no child support for Kimberly, that at one time Gene had a bonus of $1,800 which he did not use for Kimberly's support, and that Gene acted inconsistently with his statement of love for Kimberly. The court determined that Meredyth and Robert's home is a stable, loving, and secure home for Kimberly. The trial court concluded that clear and convincing evidence showed Gene abandoned Kimberly. Pursuant to North Dakota Century Code Section 14–15–19,[2] the trial court ordered Gene's

---

1. Failing to pay child support and failing significantly to communicate with a child are not grounds for termination of parental rights under the Revised Uniform Adoption Act, Chapter 14–15, N.D.C.C. However, consent to adoption is not required of the parent of a child in the custody of another who for at least one year has failed significantly to communicate with the child without justifiable cause. Sec. 14–15–06(1)(b), N.D.C.C.

2. Section 14–15–19, N.D.C.C., relating to relinquishment and termination of parental rights, provides, in part:
"3. In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued in connection with an adoption proceeding under this chapter on any ground provided by other law for termination of the relationship, and in any event on the ground (a) that the minor has been abandoned by the parent, (b) that by reason of the misconduct, faults, or habits of the parent or the repeated and continuous neglect or refusal of the parent, the minor is without proper parental care and control, or subsistence, education, or other care or control necessary for his physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering or probably will suffer serious physical, mental, moral, or emotional harm, or (c) that in the case of a parent not having custody of a minor, his consent is being unreasonably withheld contrary to the best interest of the minor."

parental rights in Kimberly terminated. As a result, Gene's right to withhold consent to Kimberly's adoption was extinguished. Sec. 14–15–19(1), N.D.C.C. In addition, the trial court approved Robert's petition to adopt Kimberly.

Gene raised four issues on appeal: the scope of appellate review of a termination of parental rights in connection with an adoption proceeding, the sufficiency of the evidence used by the trial court to determine that Gene had abandoned Kimberly, the propriety of the trial court's questioning of the witnesses, and the adequacy of representation by court-appointed counsel.

Although Meredyth did not state that she was petitioning under the Revised Uniform Adoption Act, we assume she did so. Her petition was not properly endorsed to conform to a termination under the Uniform Juvenile Court Act, Chapter 27–20, N.D. C.C.[3] Section 27–20–03 of the Uniform Juvenile Court Act states:

"1. The juvenile court has exclusive original jurisdiction of . . .:

"a. . . .

"b. Proceedings for the termination of parental rights *except* when a part of an adoption proceeding; . . ." [Emphasis added.]

In the case at hand, the petitions for termination of Gene's parental rights and for Robert's adoption of Kimberly were brought at the same time and were considered in one proceeding. The termination of Gene's parental rights was ordered and will be reviewed pursuant to the Revised Uniform Adoption Act.

The Revised Uniform Adoption Act does not specify the scope of review of a termination of parental rights. The only section of the Act concerning appeals sets forth the

procedure to be followed, but not the scope of appellate review. It provides, in part:

"1. An appeal from any final order or decree rendered under this chapter may be taken in the manner and time provided for appeal from a judgment in a civil action." Sec. 14–15–15, N.D.C.C.

In *Matter of Adoption of Gotvaslee*, 312 N.W.2d 308, 311–312 (N.D.1981), we stated:

"This court has not yet specifically decided whether the Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C., or the Revised Uniform Adoption Act, Chapter 14–15, N.D.C.C., controls our scope of review regarding termination of parental rights in connection with adoption proceedings. Both Chapter 27–20 and Chapter 14–15, N.D.C.C., provide for termination of parental rights on the basis of abandonment. § 27–20–44(1)(a) and § 14–15–19(3), N.D.C.C."

In *Gotvaslee* the issue of scope of review was not raised because both parties agreed that the review of that case was governed by Rule 52(a) of the North Dakota Rules of Civil Procedure.[4] Rule 52(a) provides, in part, that "[f]indings of fact shall not be set aside unless clearly erroneous, . . ."

In the instant case, Gene raised the issue of the proper scope of review of a termination of parental rights in connection with an adoption proceeding. He contends that the action should be reviewed in the same manner as a termination of parental rights under the Uniform Juvenile Court Act because the proceedings are essentially the same under the Revised Uniform Adoption Act, Chapter 14–15, N.D.C.C., and the Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C. The Pritchetts urge that the case be reviewed under the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. Courts in other States which have adopted

---

3. Section 27–20–19, N.D.C.C., prohibits the filing of a petition under the Uniform Juvenile Court Act unless the juvenile supervisor, the court, or other person authorized by the court has determined and "endorsed upon the petition that the filing of the petition is in the best interest of the public and the child."

4. Similarly, in *Mortenson v. Tangedahl*, 317 N.W.2d 107, 112, fn. 6 (N.D.1982), both parties agreed that the court's review was governed by Rule 52(a), N.D.R.Civ.P. *Mortenson* also was a parental-rights termination and adoption case; however, the termination was not based upon abandonment, but rather a significant failure to communicate.

the Revised Uniform Adoption Act[5] have not yet determined the scope of appellate review of an order terminating parental rights under the Act. The Commissioners' Notes to the Uniform Act do not comment on the scope of review.

Terminations of parental rights in similar proceedings under the Uniform Juvenile Court Act are not governed by the "clearly erroneous" rule, but are reviewed in a procedure similar to a trial de novo. *In Interest of F.H.,* 283 N.W.2d 202, 211 (N.D.1979). The de novo review of a juvenile court's findings, however, varies somewhat from an actual trial de novo. This court does give the juvenile court's findings appreciable weight, taking into account the trial judge's opportunity to observe the demeanor of the witnesses. *Kleingartner v. D.P. A.B.,* 310 N.W.2d 575, 578 (N.D.1981).

Under the Uniform Juvenile Court Act the court may terminate the parental rights of a parent if "[t]he parent has abandoned the child." Sec. 27–20–44(1)(a), N.D.C.C. Under the Revised Uniform Adoption Act, the court may terminate parental rights in connection with an adoption proceeding if "the minor has been abandoned by the parent." Sec. 14–15–19(3)(a), N.D.C.C. Under both Acts, when the court determines there has been abandonment of the child, the parental rights are totally extinguished. Secs. 27–20–46 and 14–15–19(1), N.D.C.C. This court recognizes the seriousness of severing the strong, fundamental relationship between a parent and a child. *Matter of Adoption of Gotvaslee, supra,* 312 N.W.2d at 312. In *Kottsick v. Carlson,* 241 N.W.2d 842, 850 (N.D.1976), this court quoted with approval a Maryland decision which stated: "The consequences of this drastic and permanent severing of the strongest and basic natural ties and relationships has led the Legislature and this Court to make sure, so far as possible, that adoption shall not be granted over parental objection unless the course clearly is justified." *Beltran v. Heim,* 248 Md. 397, 401, 236 A.2d 723, 725 (1968).

The result of a determination of abandonment is identically severe and permanent under the Uniform Juvenile Court Act and the Revised Uniform Adoption Act. Therefore, we will review a termination of parental rights based on abandonment under the Revised Uniform Adoption Act in the same manner as we review terminations of parental rights based on abandonment under the Uniform Juvenile Court Act, i.e., a form of de novo proceeding.

If, in the case at hand, Gene's parental rights are to be terminated, Meredyth has the burden of proving Gene abandoned Kimberly. In termination proceedings under the Uniform Juvenile Court Act the burden of proof required is that the abandonment be proved by clear and convincing evidence. In *In Interest of F.H., supra,* 283 N.W.2d at 211, we stated that "the burden is on the parent challenging the right of a natural parent to the care, custody, and control of his child, to prove by clear and convincing evidence the existence of all required factors for termination of parental rights."

Because of the fundamental importance of a termination-of-parental-rights action, the burden imposed by this court on similar actions which sever parents' rights will also be used when terminating parental rights under the Revised Uniform Adoption Act. The party seeking termination must show abandonment by evidence which is clear and convincing. See *Huey v. Lente,* 85 N.M. 585, 596, 514 P.2d 1081, 1092 (Ct. App.1973), Hernandez, J., specially concurring; concurrence adopted by the New Mexico Supreme Court, 85 N.M. 597, 514 P.2d 1093 (1973). "Clear and convincing evidence" has been defined as evidence leading to a firm belief or conviction that the allegations are true. *Zundel v. Zundel,* 278 N.W.2d 123, 130 (N.D.1979). The trial court stated in its oral opinion: "[T]o avoid any ambiguity I am finding the aspects of abandonment . . . by clear and convincing evidence."

---

**5.** In addition to North Dakota, Montana, New Mexico, Ohio, and Oklahoma have adopted the Revised Uniform Adoption Act.

■ There is no single accepted definition of what to "abandon" means. *Rahn v. Prudential Ins. Co.,* 259 N.W.2d 838, 840 (Iowa 1977). An intent to abandon is a required element of abandonment of one's children. *Matter of Adoption of Gotvaslee, supra,* 312 N.W.2d at 315. This intent to abandon may be inferred from a parent's conduct. *Gotvaslee, supra,* 312 N.W.2d at 315, quoting *In re Adoption of Christofferson,* 89 S.D. 287, 290, 232 N.W.2d 832, 834 (1975). Section 14–07–17, N.D.C.C., states that "failure to support a child ... for a period of three months shall be presumptive evidence of intention wholly to abandon." This statute applies for purposes of determining whether or not a parent has violated Section 14–07–15, N.D.C.C., requiring the parent to support his child. Gene was legally obligated to pay $100 per month for child support, but he did not do so. His failure to support Kimberly is evidence of his intent to abandon her. Gene did not act in a manner to rebut that presumptive intent because he is and has been unemployed and unconcerned about finding steady employment.

■ Abandonment is a question of fact. *Matter of Adoption of Gotvaslee, supra,* 312 N.W.2d at 317. In addition to a parent's intent, we consider the parent's presence, love, care, and affection. *Gotvaslee, supra,* 312 N.W.2d at 315–316. See also *Hafley v. McCubbins,* 590 S.W.2d 892, 894 (Ky.App. 1979), wherein the court also considered a course of conduct suggesting conscious disregard of or indifference to parental obligations. Of great importance when considering a possible abandonment is the contact and communication with the child. *Gotvaslee, supra,* 312 N.W.2d at 316.

■ We have reviewed the facts of this case in a trial de novo proceeding, and we find that Meredyth has shown by clear and convincing evidence that Gene has abandoned Kimberly. Gene barely communicated with his daughter in three years. He visited her once during that time, but for only ten minutes. Gene has lived in five States since 1978 and was in North Dakota only five or six times. He sent few letters or cards to Kimberly. He rarely called her. Although Gene claims Meredyth and Robert interfered with his attempts to call and visit Kimberly, he acknowledged that he had not spoken with Kimberly for two years. Kimberly does not know who Gene is. She recognizes Robert Pritchett as her father.

Gene has not paid any of the court-ordered child support since the divorce in 1978. At one time Gene received a bonus of $1,800, but he gave none of the money to Kimberly. Gene claims to have given Meredyth four to five hundred dollars, but Meredyth disputes this. In his bench ruling, the trial judge stated:

> "Even looking at the testimony in the best light, let's ... hypothetically say [Gene] did give [Meredyth] $500 and hypothetically assume she did make visitation somewhat difficult, a casual display of interest does not vitiate against abandonment. If [Gene] had any concern for the child, there would have been more than ... the efforts that he contends he made."

■ A natural parent has a claim to his child's affection and custody. But these rights are based upon the parent's acceptance of certain correlative obligations, including to care for, protect, support, educate, give moral guidance to, and provide a home for the child. *Matter of Adoption of Thomas,* Ind.App., 431 N.E.2d 506, 512 (1982). A parent's negligent failure to perform his parental duties is significant to the issue of abandonment.

In the case at hand, Gene's attitude toward his parental obligations to Kimberly is important. During the last few years, Gene has earned less than $3,200 per year. When asked during trial how he supported himself, Gene replied: "Doing odd jobs, doing a little sheetrocking now and then. *It is enough to get me by.*" [Emphasis supplied.] Gene did not make an effort to earn income to pay court-ordered child support. Since 1978 Gene has lived in five States and has been unemployed much of the time. When questioned about his nonsupport, Gene replied: "I intend to pay it back. . . .

I suppose I will have to get a job I guess." Gene's parental obligations demand more than an intent to support his daughter. It is insufficient that Gene had no earnings with which to pay the support. Although there is evidence that work in the field in which Gene was trained (hanging dry wall) was not plentiful, there is no evidence that he could not have obtained other work or was sincerely interested in providing Kimberly with the support to which she was entitled. Gene was required to do more than earn enough money for him to "get by."

We believe this case is among those the Legislature had in mind when it provided for termination of parental rights based upon abandonment. By failing to meaningfully communicate with Kimberly and by failing to support Kimberly, Gene failed to commit himself to an active parent-child relationship. As a result Gene became a stranger to his daughter. Gene himself relinquished his parental rights by ignoring his parental duties. See *In Interest of Goettsche,* 311 N.W.2d 104, 107 (Iowa 1981). On the basis of our de novo review of the testimony and giving appreciable weight to the opportunity of the trial judge to observe the demeanor of the witnesses, we conclude that the trial court was correct in terminating Gene's parental rights and granting Robert's petition to adopt.

Gene also raises two issues involving the trial. He claims the court improperly questioned the witnesses regarding his fitness as a parent. In *State v. Yodsnukis,* 281 N.W.2d 255, 260 (N.D.1979), we stated the two concerns that compete in a determination of whether a judge's interrogation of witnesses is proper or an abuse of discretion. They are the parties' right to a fair trial and the policy of encouraging trial judges to clarify testimony and impartially discover elusive facts. "A trial judge acts properly when his questioning is designed solely to clarify the examined witness's testimony." *State v. Lind,* 322 N.W.2d 826, 840 (N.D.1982).

■ In the instant case the trial judge's questions were designed to clarify the testimony. For example, the court examined Gene regarding his ability and motivation to support himself and his daughter:

"Q. You have earned $100 in three months. How else have you been living?

"A. My friend has been supporting me; things like that. I got a friend I owe two, three hundred for this.

"Q. This man you are living with feeds you and clothes you?

"A. We go and hunt whenever we can, like we did quite a bit of duck hunting and we do what we can. If it gets tight I shovel a sidewalk or whatever."

These questions and others of the court were asked so that the court could understand the facts before it determined the issues.

In a criminal case the judge ordinarily asks questions to make testimony comprehensible to the jurors. In a civil case, and especially a termination-of-parental-rights case, we consider it proper and we encourage the trial judge to ask those questions necessary for his comprehension of the total situation. In *Miller v. Miller,* 79 N.D. 161, 167, 55 N.W.2d 218, 221 (1952), this court stated:

"The general rule is that 'A judge presiding on a trial is not a mere moderator, but has active duties to perform without partiality in seeing that the truth is developed, and it is his duty in the exercise of sound discretion to elicit the evidence upon relevant and material points involved in the case.' *Messer v. Bruening,* 32 N.D. 515, 156 N.W. 241."

In these termination proceedings the judge bears a special responsibility to ascertain the facts because of his concern for the interests of the child. We have examined the record in the instant case, and we do not find that the trial judge unduly participated in the examination of the witnesses. We note that at no time did Gene object to the questioning by the judge during the trial.

Gene also claims that he received inadequate representation at trial by court-appointed counsel. We have considered his contention and find it to be without merit.

We affirm the trial court's judgment terminating Gene Korner's parental rights and granting Robert Pritchett's petition to adopt.

ERICKSTAD, C.J., and SAND and PAULSON, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the results and in most of the philosophical reasoning in the majority opinion. By clear and unambiguous language, Rule 52(a), NDRCivP, is made to apply "in all actions tried upon the facts without a jury." The findings of fact, including the finding of abandonment, are supported by the evidence—clearly and convincingly. There are no clearly erroneous findings under any theory and I know of no rule or statute that permits a trial de novo in this kind of action.