990 P.2d 316 (1999)
1999 OK CIV APP 104
In the Matter of the ADOPTION OF C.R.B. and D.M.B., minors.
Rial Baxter, Appellant,
v.
Kenneth and Lois Reynolds, Appellees.
No. 92,014.
Court of Civil Appeals of Oklahoma, Division No. 2.
May 25, 1999.
Rehearing Denied July 13, 1999.
Certiorari Denied October 27, 1999.
David R. Thomas, Timothy E. Wilson, Latham, Nelson & Thomas, Altus, Oklahoma, For Appellant.
Rafe R. Hall, Olson, Hall, Darby and Leverett, Altus, Oklahoma, For Appellees.
Tom Pixton, Elk City, Oklahoma, For Minor Children.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 2.

*317 OPINION

STUBBLEFIELD, P.J.
¶ 1 On September 24, 1997, Petitioners Kenneth Reynolds and Lois Reynolds, the maternal grandparents of the minor children, C.R.B. and D.M.B., filed a petition for adoption of the children. They named their deceased daughter, Sharon Baxter, as the natural mother and Respondent Rial Baxter (Father) as the natural father of the two children. On that same date, they filed a petition to terminate the parental rights of Father, alleging that he was unfit and had abandoned the two children, leaving them with Grandparents.
¶ 2 Ten months after commencing the action, Grandparents filed an "Amended Petition to Terminate Parental Rights" as well as an "Application to Determinate Eligibility for Adoption without Consent." In their Application, they alleged Father had willfully failed to maintain a significant relationship with the minor children through visitation or communication for a period of twelve consecutive months immediately preceding the filing of the "Petition for Adoption." This contention as grounds for the lack of need for Father's consent to adoption  alleging failure to establish a significant relationship for twelve out of the fourteen months preceding the filing of the adoption petition  is a provision added to the "Exceptions to requirement of parental consent" statute, effective in 1997. 10 O.S. Supp.1997 § 7505-4.2(H).
¶ 3 Father answered and sought dismissal of the action. However, the trial court denied Father's motion to dismiss and overruled various objections to Grandparents' amended petition.
¶ 4 After hearing, the trial court took the matter under advisement. In the subsequent *318 order, the trial court found that Grandparents had failed to prove that Father had abandoned his children or failed to support them. However, the trial court determined a "relevant period"  July 23, 1996, to September 24, 1997  for the "significant relationship" determination under 10 O.S. Supp.1997 § 7505-4.2, and ruled that Father had failed to establish a significant relationship with his children during twelve months of that period. Based on that determination, the trial court held that Father's consent was not required in the adoption proceeding. Father appeals.
¶ 5 Because adoption without parental consent effects a termination of parental rights, the magnitude of the rights involved requires proof that is clear and convincing. In re Adoption of Darren Todd H., 1980 OK 119, ¶ ___, 615 P.2d 287, 290; see also Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Adoption of R.W.S., 1997 OK 148, ¶ 10, 951 P.2d 83, 85. An appellate court will examine the trial court's conclusion regarding a child's eligibility for adoption without the consent of the biological parent to determine if it is supported by the clear weight of the requisite clear and convincing evidence. In re Adoption of Blevins, 1984 OK CIV APP 41, ¶ 9, 695 P.2d 556, 560.
¶ 6 Father first proposes that the trial court erred in finding, by clear and convincing evidence, that he had willfully failed to maintain a significant relationship with his minor children through visitation and/or communication for a period of twelve consecutive months out of the last fourteen months immediately preceding the filing of the petition for adoption. After careful review of the evidence, we agree.
¶ 7 Herein, the following facts were generally uncontested: (1) Mother and Father were married and living together on July 23, 1996;[1] (2) Father, Mother and their two children, both born-in-wedlock, lived in a house owned by Grandparents that was located across the street from Grandparents' Mangum home; (3) Father was employed in Nevada, which required three weeks on-duty in Nevada, followed by one week off duty when Father would return to be with his family in their Mangum home; (4) Mother became terminally ill while in Nevada and returned to their Oklahoma home;[2] (5) Father continued his employment in Nevada during Mother's illness; (6) Mother was hospitalized in Texas; (7) With the consent of Mother and Father, Grandparents began caring for the seventeen-month-old son and four-year-old daughter; (8) During his off-duty time, Father returned to Oklahoma and visited with Mother in the hospital and with the children; (9) Mother died on October 21, 1996; (10) Father returned for the funeral and remained in Oklahoma for about four weeks after Mother's death; (11) Father entrusted the care of the children to Grandparents so that he could continue his employment; (12) The clothing and other personal care items of the infant child were moved to Grandparents' house but the clothing and personal belongings of the older child remained in her room at Father's residence; (13) Father established a joint-checking account with Grandmother as a means of providing funds for the care of the children and into which his employer made a direct deposit of approximately one-third of each of his paychecks; (14) Father continued to carry medical insurance on the children through his employer; (15) Father returned to his three-weeks-on/one-week-off work schedule; (16) The older child spent nights with Father during his off-duty weeks in Oklahoma; (17) Father visited with the infant primarily at Grandparents' house; (18) Father called the children thirty-eight times at Grandparents' Mangum home from Nevada; (19) Father quit his job in Nevada and returned to Oklahoma to be closer to his children; (20) Father and the older child went on a vacation in Wyoming in March and April 1997; (21) Father planned and purchased airline tickets for both the children to *319 accompany him to Alaska on a job search;[3] (22) Father found a job in Altus but continued to live across the street from Grandparents; (23) The informal arrangement for Grandparents to care for the children was continued; (24) Grandmother withdrew cash from and wrote checks on the checking account established by Father for the care of the children; and, (25) After Grandparents filed this action, Grandmother removed her name from the account.
¶ 8 The exact meaning of the phrase "maintain a significant relationship" has not been addressed previously by the courts of this state. However, Father cites cases from other jurisdictions in which the issue was whether a parent had maintained a significant relationship with a child.
¶ 9 The court in Adoption of Male Child, 56 Haw. 412, 539 P.2d 467 (1975), noted that a single card, a single brief letter or note, or a single phone call to a child within a two-year period was but de minimis or mere token communication. However, the court found that an actual visit by a parent with a child was a substantial and meaningful contact. The court in Adoption of K.M.M., 611 P.2d 84 (Alaska 1980), held that a father who had directly communicated with the children at Christmas and on birthdays by sending presents, cards and letters, although he did not personally visit with children, did not fail to meaningfully communicate with his children, and thus, his consent to adoption was required.
¶ 10 Herein, we find that Father's relationship to his children, during each of the fourteen months, constituted a significant relationship. Father did provide for his children, did interact with them and was a father to them. Even his allowing Grandparents to assume a substantial role in the rearing of the children cannot be adjudged as a negligent act or one in breach of his parental obligations. It was an act likely to be of benefit to both the children and Grandparents that must be viewed in light of Father's and Grandparents' loss of a wife/daughter to illness. There certainly was evidence that Father was not always the best of parents  he was not as attentive towards his children as he might have been and might have relied excessively on Grandparents to provide care for the children, especially the infant. But we must be mindful that this was not a determination of whether Grandparents might serve better as parents of the minor children. Furthermore, termination of parental rights  which has the effect of the order finding that Father's consent to adoption was not necessary  is not a means by which the State can exact conformity from a parent to a common value system. In re Sherol A.S., 1978 OK 103, 581 P.2d 884.
¶ 11 Herein, the sole issue was whether Father's consent to the adoption was necessary. The trial court found that Grandparents did not prove two alleged grounds. We find that the evidence clearly negates the last ground. We find, as a matter of law, that Father maintained a significant relationship with his minor children, and that the trial court's determination that there was clear and convincing evidence that Father had not maintained such a significant relationship is against the weight of the evidence.
¶ 12 In additional propositions of error, Father proposes that the trial court erred in (1) retroactively applying 10 O.S. Supp.1997 § 7505-4.2;[4] (2) failing to dismiss Grandparents' action on the grounds that Grandparents *320 did not have standing; and (3) allowing the late amendment by Grandparents to raise the "significant relationship" issue without leave of court. However, because our determination rendered on consideration of Father's first proposition is dispositive of the appeal, we need not address these additional contentions.
¶ 13 Based on all the foregoing analysis, the judgment of the lower court is reversed and the matter remanded with instructions to deny the adoption petition, absent Father's consent.
¶ 14 REVERSED AND REMANDED WITH INSTRUCTIONS.
¶ 15 BOUDREAU, V.C.J., and REIF, J., concur.
NOTES
[1] Wife was alive during the first three months of the fourteen-month period cited by the trial court as the relevant time frame.
[2] The evidence was not clear as to whether she and the children were in Nevada with Father or whether Mother had traveled to Nevada alone at the time she became ill.
[3] Father testified that Grandmother and Grandfather told him that the infant had an ear infection and could not fly; Grandmother denied having told him the child could not fly. He went alone to Alaska.
[4] Renumbered from 10 O.S. Supp.1993 § 60.6, and amended by Laws 1997, ch. 386, § 17, emerg. eff. June 10, 1997. That amended version did not contain the provision for adoption without the consent of a parent for failure to maintain a "significant relationship" with the children. A second amendment of that statute, effected by Laws 1997, ch. 366, §§ 27, 58, eff. Nov. 1, 1997, added the "significant relationship" provision. The statute was subsequently amended by Laws 1998, ch. 5, § 9, emerg. eff. March 4, 1998, and by Laws 1998, ch. 415, § 21, emerg. eff. June 11, 1998. The failure to "maintain a significant relationship" provision was retained with a fundamental addition of the phrase "through visitation or communication." Here, Father resided with his children for three months of the fourteen-month period and resided with the older child through much of the remaining time frame. 10 O.S. Supp.1998 § 7505-4.2(H).