2000 OK CIV APP 132

**In the Matter of the ADOPTION OF J.N.K., a minor child.**

**Nancy Windsor Lange and Christopher Lamar Lange, Petitioners/Appellees,**

v.

**Darren Lee Konechney, Respondent/Appellant.**

**No. 94,426.**

Court of Civil Appeals of Oklahoma, Division No. 3.

July 21, 2000.

Certiorari Denied Oct. 24, 2000.

J. Kyle Babbit, Oklahoma City, OK, for Appellants.

Lauren Le Blanc Day, Oklahoma City, OK, for Appellees.

## OPINION

HANSEN, Vice-Chief Judge:

¶ 1 Appellant Darren Konechney (Father), the natural father of J.N.K., seeks review of the trial court's order determining J.N.K. eligible for adoption without his consent. The Petitioners/Appellees are J.N.K.'s natural mother, Nancy Lange (Mother), and Mother's husband, Christopher Lange (Stepfather). The parties agree Father has never missed a child support payment and has paid more than $25,000.00 in support since 1994; therefore, the sole issue at trial was whether Father "willfully fail[ed] to maintain a significant relationship" with J.N.K., pursuant to 10 O.S.Supp.1998 § 7505–4.2(H), "through visitation or communication" for twelve out of the last fourteen months immediately preceding the filing of Stepfather's petition to adopt J.N.K. The trial court ruled "the minimum amount of visitation necessary to create a significant parent/child relationship" was the court-ordered visitation granted Father in a 1994 paternity action. The trial court found Father had not maintained the required relationship with his son for the required period of time and therefore his consent was not necessary for J.N.K.'s adoption. Father appeals, contending the trial court applied an improper standard and Petitioners failed to meet their burden of proof.[1] We agree and reverse.

¶ 2 In reviewing a determination of a child's eligibility for adoption without the consent of the biological parent, we will examine issues of law *de novo* and issues of fact under a "clear and convincing" standard. *In re Adoption of C.R.B.*, 1999 OK CIV APP 104, 990 P.2d 316, 318. A child may not be adopted without parental consent unless one of the grounds of 10 O.S.Supp.1998 § 7505–4.2 is shown by clear and convincing evidence. *Id.* In *C.R.B.*, the Court discussed the meaning of "maintain a significant relationship" as it is used in § 7505–4.2(H). *Id.* at 319. Its review of the case law from other states reflects that the level of contact considered necessary to "maintain a significant relationship" is much, much less than the minimum visitation to which a noncustodial parent is entitled. A single visit, or sending cards and letters on holidays, may be enough. *Id.*

1. Father also contends the trial court committed evidentiary errors. Because we reverse on other grounds, we need not reach these issues.

¶ 3 The language of subsection H itself indicates that mere "communications" may substitute for actual visitation in maintaining the relationship. Furthermore, nowhere does the statute indicate the significance of the relationship must rise to the level of societal norms for a "parent-child relationship." Father need not show he is a good father, and he need not show he would win a fathering competition with Stepfather in order to preserve his right to consent or withhold consent to the adoption of his child. As the Court stated in *C.R.B.*, "termination of parental rights—which has the effect of the order finding that Father's consent to adoption was not necessary—is not a means by which the State can exact conformity from a parent to a common value system." *Id.* Accordingly, the trial court erred by applying an improper standard when it ruled the minimum visitation required under Subsection H was the visitation granted Father in the 1994 paternity action.

¶ 4 In order for Stepfather to adopt J.N.K. without Father's consent, Stepfather and Mother, as Petitioners, were required to prove the Subsection H exception by clear and convincing evidence. Even under Mother's version of the facts, the evidence did not establish Father willfully failed to maintain a significant relationship with J.N.K. through visitation or communication for a period of twelve consecutive months out of the last fourteen months immediately preceding the filing of the petition for adoption. Mother testified that between 1994 and April of 1999, Father's contacts with J.N.K. numbered "[l]ess than fifteen probably." She agreed Father called her in April 1999 and told her he wanted to see his son. She suggested he attend J.N.K.'s T-ball practice that week, which he did. Father had no contact with J.N.K. at the first practice, but Mother introduced him to J.N.K. at the second practice. Father began attending T-ball practices and games and spending time with J.N.K. afterwards, taking him for ice cream or to eat elsewhere. Father would then return J.N.K. to Mother's house and play with him in the backyard. Mother testified these contacts were "an hour" in length. She agreed Father attended four games and four or five practices. She said he had not more than six contacts with J.N.K. and telephoned him three times from April to September, 1999. Both Mother and Father testified Mother requested that Father not tell J.N.K. he was J.N.K.'s father, and Father complied with her request. The contacts ended in September 1999 when the petition for adoption was filed. Father continued to pay child support.

¶ 5 Father testified he had more and longer visits with J.N.K. However, even the lesser contact admitted by Mother is sufficient to establish Petitioners did not meet their burden of proof under Subsection H. Therefore Father's consent is required before J.N.K. may be adopted and the trial court erred in finding otherwise.

¶ 6 For the foregoing reasons, the order of the trial court determining J.N.K. was eligible for adoption without Father's consent is **REVERSED.**

ADAMS and JOPLIN, JJ., concur.