2006 OK CIV APP 24

**In the Matter of the ADOPTION OF BABY A.**

**No. 101,144.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 27, 2006.

Julie M. Fulton, Oklahoma City, OK, for Appellant/Natural Father.

Barbara K. Bado, John Terry Bado, Bado and Bado, Oklahoma City, OK, for Appellees/Adoptive Parents.

Opinion by LARRY JOPLIN, Judge.

¶1 Appellant/Natural Father (Father) seeks review of the trial court's order permitting adoption of Baby A. (Child) without his consent. In this appeal, Father asserts the trial court erred as a matter of both fact and law in holding his consent unnecessary, and violated his constitutionally protected right to the parent/child relationship. Having reviewed the record, the order of the trial court is affirmed.

¶2 In September 1999, Baby A. was born out of wedlock from the union of Father and J.I. (Mother) while Father was a member of the United States Armed Forces. Father paid some child support as ordered by the Oklahoma Department of Human Services, but did not visit or communicate with Child to any significant degree.

¶3 In November 2002, Appellees/Adoptive Parents (Parents) filed their Petition to Adopt Child, to which Mother consented. Parents sought to adopt without Father's consent on allegations of Father's failure to support Child, and failure to establish and maintain a substantial and positive relationship with Child. See, 10 O.S.2001 § 7505-4.2. Upon notice to Father, he objected to the adoption.

¶4 The parties presented evidence and testimony to the trial court over three days in March 2004. Father testified that his service as a submariner required long periods at sea, and that his military service effectively prevented him from regularly visiting or communicating with Child. Father asserted, however, that he visited Child whenever possible during his annual leaves.

¶5 Mother testified and presented evidence showing that Father contributed nothing to her support during her pregnancy, and had failed to fully comply with DHS support order. Mother testified that Father had no personal contact with Child during Child's lifetime except for two brief visits, once in November or December 1999, and once in May 2002, when Mother, at her own expense, traveled with Child from Virginia to Oklahoma by bus so that Father could see Child while on leave. Mother also testified that Father never sent any cards, letters or packages between January 2001 and May 2002, and that Father had no contact or communication with Child after his May 2002 visit, although during the previous fourteen months, he had spent eight months on land, and had been provided with a free cell phone by the military.

¶6 Upon consideration of the testimony and evidence, the trial court determined Father had failed to establish and maintain "a substantial and positive relationship" with Child by "frequent and regular communication" as required by 10 O.S.2001 § 7505-4.2(H)(1) and (3). The trial court thus held Child eligible for adoption without Father's consent.

¶ 7 To the extent the issue in the present case concerns which of two statutes applies, the question constitutes one of law, and we review the trial court's judgment by a *de novo* standard, without deference to the trial court's conclusion. *See, e.g., In re A.N.O.*, 2004 OK 33, ¶ 3, 91 P.3d 646, 647; *State, ex rel. Dept. of Human Services ex rel. Jones v. Baggett*, 1999 OK 68, ¶ 4, 990 P.2d 235, 238. To the extent the issues concern questions of fact, "[t]he law presumes that consent of a child's natural parents is necessary before an adoption may be effected[,] ... [and][t]he burden is on the party seeking to adopt without consent to prove such adoption is warranted by clear and convincing evidence." *In re Adoption of C.D.M.*, 2001 OK 103, ¶ 13, 39 P.3d 802, 807. (Citations omitted.) "Accordingly, the decision of the trial court will not be disturbed unless it fails to rest on clear and convincing evidence." *Id.*

¶ 8 Prior to June 1, 2001, § 7505–4.2(H) provided:

> Consent to adoption is not required from a parent who willfully fails to maintain a significant relationship with a minor through visitation and communication for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.

10 O.S. Supp.1998 § 7505–4.2(H). Effective June 1, 2001, however, the Oklahoma Legislature re-wrote § 7505–4.2(H), which now provides:

> 1. Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child.
>
> ....
>
> 3. For purposes of this subsection, "fails to establish and/or maintain a substantial and positive relationship" means the parent:
>
> > a. has not maintained frequent and regular contact with the minor through frequent and regular visitation or frequent and regular communication to or with the minor, or
> >
> > b. has not exercised parental rights and responsibilities.

10 O.S.2001 § 7505–4.2(H).

¶ 9 In his first proposition, Father complains the trial court erred as a matter of fact in holding Parents demonstrated by clear and convincing evidence his failure to establish and maintain "a substantial and positive relationship" by "frequent visitation" and/or "frequent communication" with Child as required by the 2001 version of § 7505–4.2(H)(1) and (3). We disagree.

¶ 10 The evidence in the present case clearly and convincingly demonstrated that Father took little, if any, interest in any contact or communication with Child since birth. During the last fourteen months prior to commencement of the instant adoption proceeding, Father was at sea for only six months, but made little or no effort to either contact or visit Child, or even to ascertain her whereabouts. Father's sole contact with Child over the preceding fourteen months was limited to one visit when Mother, at her own expense, traveled with Child by bus from her residence in Virginia to Oklahoma so that Father could see Child while on leave.

¶ 11 The trial court found Father's "communications were, at best, sometimes, now and then, not frequent and not regular," and "d[id] not suffice" under the 2001 version of § 7505–4.2(H). The trial court consequently concluded Father had failed to "establish and/or maintain a substantial and positive relationship with Child for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately prior to the filing of the adoption petition and as a result failed to exercise parental rights and duties over the child." We find the trial court's conclusion supported by clear and convincing evidence.

¶ 12 In his third proposition, Father complains the trial court's application of amended § 7505–4.2 in this case deprives him of his constitutionally-protected right to a parental relationship with Child. As is readily apparent, however, amended § 7505–

4.2(H) differs very little from the predecessor section. While the predecessor refers to a "parent who *willfully* fails to *maintain a significant relationship* with a minor," the amended section deletes the word, "willfully," and now refers to "a parent who fails to *establish and/or maintain a substantial and positive relationship* with a minor." (Emphasis added.) The amended section also now specifically defines the phrase, "fails to establish and/or maintain a substantial and positive relationship," to require either "frequent and regular visitation or frequent and regular communication" between a parent and child, or some other exercise of "parental rights and responsibilities."

¶ 13 Applying the previous version of § 7505–4.2, the appellate courts noted some lack of guidance to determine whether a "significant" parent-child relationship had been established. *See, In re Adoption of C.R.B.*, 1999 OK CIV APP 104, ¶ 8, 990 P.2d 316, 319[1]; *In re Adoption of J.N.K.*, 2000 OK CIV APP 132, ¶ 2, 15 P.3d 521, 522.[2] The 2001 amendment, however, now makes clear that a "substantial and positive" parent-child relationship is not "established" or "maintained" with mere token contact or communication between a parent and child.

■ ¶ 14 The 2001 statutory changes are entirely consistent with the constitutional protections of the parent-child relationship, which spring from the *exercise* of parental duties, obligations and responsibilities. *See, e.g., In re Adoption of O.L.P.*, 2002 OK CIV APP 17, 41 P.3d 999; *Matter of Adoption of Baby Boy D.*, 1985 OK 93, 742 P.2d 1059. *See also, Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). The constitutional protection of the parent-child relationship extends only to a parent who actually embraces the duties, obligations and responsibilities of parenthood, and "where a natural parent fails to demonstrate a full commitment to the responsibilities of parenthood, the state is not constitutionally or statutorily compelled to heed the parent's objections to the adoption of his or her child." *Adoption of O.L.P.*, 2002 OK CIV APP 17, ¶ 14, 41 P.3d at 1001–1002; *Adoption of Baby Girl M.*, 1997 OK CIV APP 33, ¶¶ 5–14, 942 P.2d at 240–241.

¶ 15 In *Adoption of Baby Girl M.*, the Court of Civil Appeals held the predecessor to § 7505–4.2(H) met constitutional muster. 1997 OK CIV APP 33, ¶ 14, 942 P.2d at 241. The primary difference between the former section and amended § 7505–4.2(H) is the addition of the subsection (H)(3) gauge to measure the extent of a parent's commitment to and assumption of the responsibilities of parenthood. The inquiry under amended § 7505–4.2(H) remains focused on the extent to which a parent has embraced the responsibilities of parenthood, a constitutionally valid inquiry. We consequently find amended § 7505–4.2(H) free of constitutional infirmity.

■ ¶ 16 In his second proposition, Father complains the trial court erred as a matter of law in applying the 2001 version of § 7505–4.2(H), and should have applied the pre–2001 version of § 7505–4.2(H), with which the trial court specifically found Father had complied.[3] However, the parties do not dispute that the relevant period of inquiry under either the pre- or post–2001 version of § 7505–4.2 began in September 2001, fourteen months before the filing of the Petition for Adoption in November 2002. At all times during this period, amended § 7505–4.2, effective June 1, 2001, was in force.

---

1. "The exact meaning of the phrase 'maintain a significant relationship' has not been addressed previously by the courts of this state."

2. "A single visit, or sending cards and letters on holidays, may be enough."

3. The trial court's conclusion of Father's compliance with the pre–2001 standard is apparently based on the statement in *Adoption of J.N.K.*, suggesting "[a] single visit, or sending cards and letters on holidays, may be enough." 2000 OK CIV APP 132, ¶ 2, 15 P.3d at 522, footnote 2, supra. However, as we have noted, the 2001 version of § 7505–4.2(H) now specifies that a "substantial and positive relationship" requires either "frequent and regular visitation or frequent and regular communication" between a parent and child, or some other exercise of "parental rights and responsibilities." Thus, to the extent *Adoption of J.N.K.* suggests nominal contact between a parent and child will suffice, the 2001 statute makes clear that is no longer the case.

¶ 17 In this respect, the parties cite, and we find, no authority from *any* jurisdiction suggesting Father has some constitutionally-protected or other vested right to the adjudication of the extent of his relationship with his biological child under the pre-amendment statute, and, indeed, we can fathom no argument supporting application of a statutory standard of parental conduct which did not exist during the relevant period of inquiry. We refuse to so hold here, and conclude the trial court did not err as a matter of law in applying § 7505–4.2 as it existed during the fourteen months previous to the filing of the petition to adopt.

¶ 18 The order of the trial court is therefore AFFIRMED.

HANSEN, J., and BELL, P.J., concur.